Jason WILSON, a minor; Nancy Wilson, plaintiff's mother and next friend; Nancy Wilson, individually; and Patrick Wilson, individually, Plaintiffs–Appellants,

v.

Albert Patrick MARCHIONDO, a/k/a Patrick Marchiondo 3132 Scranton Street, LLC, a/k/a 3132 Scranton Avenue LLC, a suspended Colorado limited liability company, Defendant–Appellee.

No. 03CA1263.

Colorado Court of Appeals, Div. IV.

April 7, 2005.

Rehearing Denied June 9, 2005.

Certiorari Denied Dec. 19, 2005.

Law Firm of William Babich, William Babich, Denver, Colorado, for Plaintiffs–Appellants.

Harris, Karstaedt, Jamison, & Powers, PC, A. Peter Gregory, Heather A. Salg, Celenda M. Wagenknecht, Englewood, Colorado, for Defendant–Appellee.

GRAHAM, J.

Plaintiffs, Nancy Wilson, Patrick Wilson, and their son, Jason Wilson (the victim) appeal the summary judgment in favor of defendant, Albert Patrick Marchiondo (landlord). We affirm.

The victim was bitten by a Rottweiler dog while playing in the backyard of the residence of Rusty and Sandy Walters (tenants). Tenants owned the dog and kept it at their residence, which they leased from landlord.

The lease provided that the premises were to be used and occupied by tenants exclusively, but prohibited animals on the leased premises without the written consent of landlord. Landlord retained a right of inspection under the lease and was also obligated for maintenance and repair that was not a result of tenants' misuse.

According to the deposition testimony of one tenant, prior to leasing, landlord verbally

agreed to allow tenants to keep the dog at their residence and they informed landlord that they would place a "Beware of Dog" sign on the fence. She put up the sign because the dog was large and they did not want anyone in their back yard. After tenants moved in, landlord observed the dog when he came to inspect the premises, and asked tenants to put the dog in a closed room when painters came to work on the property. In response to neighbors' complaints of the dog's growling, barking, and slamming against the fence, landlord also agreed to the completion of a secondary inner fenced area to restrict the dog. Although landlord disputes these facts and testified that he was not aware that the dog was in tenants' residence until he was informed that the dog had attacked the victim, we must accept these facts for purposes of summary judgment.

Plaintiffs filed a complaint against landlord and tenants, alleging theories of negligence, strict liability, and civil conspiracy. Default judgment was entered against tenants, and the trial court granted summary judgment in favor of landlord, concluding landlord was not at fault because he had no prior knowledge of the dog's vicious nature. This appeal followed.

## I. Summary Judgment Standard

Summary judgment is appropriate only if the pleadings and supporting documents demonstrate that there is no genuine issue for trial as to any material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56. The burden is on the moving party to establish that no genuine issue of fact exists, and any doubts in this regard must be resolved against the moving party. We review these issues de novo. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.,* 901 P.2d 1251, 1256 (Colo.1995); *Bedard v. Martin,* 100 P.3d 584, 591 (Colo.App.2004).

## II. Premises Liability

■ Plaintiffs challenge the trial court's conclusion that because landlord had no actual knowledge of the dog's vicious nature, he owed the victim no duty of care under the premises liability statute. We agree with the trial court.

At the outset, we conclude that the premises liability statute, § 13–21–115, C.R.S.2004, is plaintiffs' only means of recovery in an action against landlord. *Vigil v. Franklin,* 103 P.3d 322 (Colo.2004). The premises liability statute was enacted "to promote a state policy of responsibility by both landowners and those upon the land as well as to assure that the ability of an injured party to recover is correlated with his status as a trespasser, licensee, or invitee." Section 13–21–115(1.5)(a). Additionally, a stated purpose of the statute is to "protect landowners from liability in some circumstances when they were not protected at common law and to define the instances when liability will be imposed in the manner most consistent with the policies set forth" in the statute. Section 13–21–115(1.5)(e), C.R.S.2004.

The statute addresses actions against landowners. Here, it is undisputed that landlord was the owner of the property on which the victim was injured. A "landowner" is defined without limitation as a "person in possession of real property and a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property." Section 13–21–115(1), C.R.S.2004.

"In any civil action against a landowner by a person who alleges injury occurring while on the real property of another ... the landowner shall be liable only as provided in subsection (3) of this section." Section 13–21–115(2), C.R.S.2004. Subsection (3) defines the duty of care a landowner owes to the party injured on the landowner's premises depending on the party's status as a trespasser, licensee, or invitee, with the highest duty of care being owed to an invitee. Section 13–21–115(3), C.R.S.2004.

■ Another division of this court has noted that "it appears that the intent of the portion of the statutory definition referring to a person 'legally responsible for the condition of the real property or for activities on the property may well have been to incorporate the common law principles that governed such 'legal responsibility.'" *Perez v. Grovert,* 962 P.2d 996, 999 (Colo.App.1998).

Consistent with the notion that the statute subsumes all common law causes of action against a landowner, other divisions of this court have held that a plaintiff may recover against a landowner only as provided under the statute, and not under any common law theory. *See, e.g., Anderson v. Hyland Hills Park & Recreation Dist.,* 119 P.3d 533, 2004 WL 3015808 (Colo.App. No. 04CA0105, Dec. 30, 2004); *Henderson v. Master Klean Janitorial, Inc.,* 70 P.3d 612 (Colo.App.2003); *Thornbury v. Allen,* 991 P.2d 335 (Colo.App. 1999). Recently, the Colorado Supreme Court also recognized that the General Assembly intended the statute to be the "exclusive specification of the duties landowners owe to those injured on their property." *Vigil v. Franklin, supra,* 103 P.3d at 331.

### A.

■ Applying the premises liability statute exclusively, we initially conclude that landlord did not owe the victim a duty of care after leasing the residence to tenants because he was no longer a "person in possession" of the real property where the injury occurred and was not otherwise legally responsible for the control or presence of the dog. Absent an agreement to the contrary, a tenant is entitled to the possession of the leased premises to the exclusion of the landlord. *See Sundheim v. Bd. of County Comm'rs,* 904 P.2d 1337 (Colo.App.1995), *aff'd,* 926 P.2d 545 (Colo.1996). A landlord who has transferred control of the premises to his tenant is no longer a "person in possession" of the real property under the premises liability statute, and therefore is not liable for injuries resulting on the premises. *Perez v. Grovert, supra.*

The undisputed facts reveal landlord and tenants entered into a residential lease which specified, "The demised premises shall be used and occupied by the Lessee exclusively." Landlord retained a right of inspection and the right to approve painting and the placement of signs. Tenants were obligated to keep the premises in good repair at their expense, but landlord was responsible for major maintenance and repair that was not a result of tenants' misuse.

■ Plaintiffs argue that evidence that landlord made an oral agreement outside of the lease to allow the dog to be on the premises, and also retained his right to inspection and to perform some maintenance, indicate that he retained possession or control over the premises. However, the reservation of the right of inspection and the right of maintenance and repairs is generally not a sufficient attribute of control to support imposition of tort liability on the lessor for injuries to the tenant or third parties. *Univ. of Denver v. Whitlock,* 744 P.2d 54 (Colo. 1987); *Perez v. Grovert, supra,* 962 P.2d at 998.

Further, although landlord verbally agreed to allow the dog to be kept on the premises, there was no evidence that landlord and tenants agreed that landlord would retain possession or control of the property or of the animal. We therefore conclude, as a matter of law, that where landlord did not expressly undertake control, he was no longer "a person in possession" of the real property. Thus, landlord owed no duty of care to the victim subsequent to his leasing the space to tenants. *See Perez v. Grovert, supra.*

### B.

■ Prior to entering into the lease, however, landlord was a "person in possession" of the real property. Landlord's liability therefore depends on the duty of care he owed to the victim, according to the victim's status as an invitee, licensee, or trespasser. *See* § 13–21–115. The status of an injured party and the appropriate standard of care are determined by the relationship between the injured party and the landowner. *Henderson v. Master Klean Janitorial, Inc., supra,* 70 P.3d at 615.

An " '[i]nvitee' means a person who enters or remains on the land of another to transact business in which the parties are mutually interested or who enters or remains on such land in response to the landowner's express or implied representation that the public is requested, expected, or intended to enter or remain." Section 13–21–115(5)(a), C.R.S. 2004. " 'Licensee' means a person who enters or remains on the land of another for the licensee's own convenience or to advance his

own interests, pursuant to the landowner's permission or consent. 'Licensee' includes a social guest." Section 13–21–115(5)(b), C.R.S.2004. A trespasser is a person who enters or remains on the property of the landowner without consent. Section 13–21–115(5)(c), C.R.S.2004.

■ Plaintiffs argue that the victim was an invitee, citing *Lakeview Associates, Ltd. v. Maes*, 907 P.2d 580 (Colo.1995). The court in *Lakeview* concluded that a tenant injured while in the common areas of the leased property was an invitee of the defendant landlord for purposes of the premises liability statute, but the court did not address the status of a guest of the tenant. While a tenant is a mutually interested party in a business transaction with the landlord by virtue of the lease, *see Lakeview, supra*, the same cannot be said of a social guest of the tenant, especially when the leasehold is a residence. Nevertheless, plaintiffs argue that because the tenants are invitees of the landlord, the landlord has given the implied representation that he requests, expects, or intends social guests of the tenants to enter the premises. We are not persuaded. *See Wright v. Vail Run Resort Cmty. Ass'n*, 917 P.2d 364 (Colo.App.1996).

There is no evidence that the victim entered the premises to transact business with landlord, nor is there evidence landlord expressly or impliedly represented that the victim, as a member of the public, was requested, expected, or intended to enter or remain. *See* § 13–21–115(5)(a). It is undisputed that the victim was on the premises as a social guest of tenants to play in a tree house with tenants' children. In *Wright*, a division of this court held that the social guest of a condominium owner was a licensee with respect to the community association that maintained the area where the plaintiff was injured. This holding is consistent with § 13–21–115(5)(b), which provides that a social guest is a licensee. Here, the victim was a social guest of tenants. We therefore reject plaintiffs' argument that the victim was an invitee, and conclude that the victim was a licensee with respect to landlord.

Landlord, therefore, would be liable to the victim as a licensee if landlord's conduct, prior to entering the lease, amounted to an "unreasonable failure to warn of dangers not created by the landowner which are not ordinarily present on property of the type involved and of which the landowner actually knew." Section 13–21–115(3)(b)(II), C.R.S. 2004. Applying this duty of care, we conclude that landlord would be liable for the dog's attack if he actually knew, prior to entering into the lease, of the danger the dog presented. *See Wright, supra*, 917 P.2d at 365 (the liability of a landowner to a licensee under § 13–21–115(3)(b) is to be limited to situations in which the landowner possesses an active awareness of the dangerous condition).

Prior to leasing, the tenants contend that landlord agreed to allow the dog to be kept on the premises and to the placement of "Beware of Dog" signs. Landlord was also informed of the dog's breed at the time of leasing.

Plaintiffs further assert that landlord was told that the dog did not interact with people outside the family and landlord should not go into the backyard when the dog was there. The record reveals, however, that landlord received this information only after signing the lease, and in any event, this evidence was not submitted as part of plaintiffs' response to the motion for summary judgment.

Likewise, other evidence demonstrates that landlord became aware that the dog barked and slammed against the fence on occasion, only after tenants moved in, and that he asked that the dog be placed in a closed room when painters came to the residence.

Based upon these facts, we find no indication that prior to leasing, landlord observed or otherwise became aware of the dog biting anyone, attacking anyone, or demonstrating any vicious propensities. There is no proof that landlord came into contact with the dog prior to leasing, or observed the dog with any frequency thereafter.

Viewing these facts in the light most favorable to plaintiffs, we conclude that there is no genuine issue of material fact as to whether landlord had actual knowledge of the dog's allegedly vicious nature before he signed the

lease. Summary judgment, therefore, was appropriate.

Because the premises liability statute is the exclusive remedy under which plaintiffs may recover, we need not address plaintiffs' other theories of liability.

The judgment is affirmed.

Judge ROY concurs and Judge WEBB specially concurs.

Judge WEBB specially concurring.

While concurring in the majority's decision to affirm, I write separately because I believe applying the definition of "landowner" in § 13–21–115(1), C.R.S.2004, to a landlord who reserves the power to prohibit animals requires further explanation.

This definition includes "a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property." The segments of the definition are to be read in the disjunctive and applied separately. *Henderson v. Master Klean Janitorial, Inc.*, 70 P.3d 612 (Colo.App.2003).

Here, the lease prohibited animals on the demised premises without written consent of landlord. In my view, such a provision would usually raise a jury question precluding summary judgment based on the Premises Liability Act, because a reasonable jury could conclude that such a landlord thereby retained sufficient control to be "a person legally responsible" for damages caused by a tenant's keeping an animal, which would constitute an activity conducted or a circumstance "existing on real property." *Cf. Henderson, supra* (janitorial service could be sued under Premises Liability Act based on legal responsibility for condition of stairs on which invitee slipped and was injured).

Such a landlord's liability would depend on the legal status of the injured party and the appropriate standard of care, as determined by the relationship between the injured party and the landlord. *See Henderson, supra.* The standard of care question would require inquiry into the landlord's knowledge concerning the animal, so long as the landlord retained the power to require that the tenant either remove the animal or vacate the premises. *Cf. Sandoval v. Birx,* 767 P.2d 759 (Colo.App.1988).

Here, however, plaintiffs did not dispute that, before executing the lease, landlord had verbally agreed to allow tenants to keep the Rottweiler and landlord did not reserve any power to rescind this agreement. I agree with the majority that, even viewing the record in a manner most favorable to plaintiffs, at the time of this oral agreement landlord neither knew nor had any reason to know of the dog's allegedly vicious propensities.

Accordingly, by virtue of this verbal agreement, landlord ceased to be "a person legally responsible" for the dog, as a circumstance "existing on real property," before he had any reason to be concerned over risks that the dog might pose to third parties on the premises. Therefore, I too, conclude that summary judgment was properly entered in favor of landlord.