Kiara Vanderstoep PARIS, a minor child, by and through her mother and next best friend, Krisi PARIS, Plaintiff–Appellant,

v.

Terry DANCE, Inka Dance, and Dream Power Animal Rescue Foundation, a nonprofit Colorado corporation, Defendants–Appellees.

No. 06CA2468.

Colorado Court of Appeals, Div. A.

Feb. 21, 2008.

Certiorari Denied Oct. 14, 2008.

McCormick & Murphy, P.C., Kirk R. McCormick, Colorado Springs, Colorado, for Plaintiff–Appellant.

Harris, Karstaedt, Jamison & Powers, P.C., A. Peter Gregory, Steven R. Helling, Englewood, Colorado, for Defendants–Appellees Terry Dance and Inka Dance.

Markusson, Green & Jarvis, P.C., H. Keith Jarvis, Richard W. Pruett, Denver, Colorado, for Defendant–Appellee Dream Power Animal Rescue Foundation.

Opinion by Chief Judge DAVIDSON.

In this personal injury action, plaintiff, Kiara Vanderstoep Paris, by and through her mother and next best friend, Krisi Paris (mother), appeals from the judgment entered on a jury verdict in favor of defendants, Terry and Inka Dance, and Dream Power Animal Rescue Foundation. We affirm.

On August 23, 2003, plaintiff, who then was two and a half years old, was bitten by the Dances' dog while accompanying her mother on a visit to the Dances' home. Plaintiff filed a complaint, alleging negligence against the Dances, as owners of a dangerous animal, and against Dream Power, the shelter from which the Dances adopted their dog, for failing to warn the Dances that the dog had a bad nature and might have bitten or attempted to bite before. In turn, the Dances, and subsequently Dream Power, designated

mother as a nonparty at fault for failing to properly supervise plaintiff during the visit.

A jury found the Dances not negligent and found that Dream Power had acted negligently but its negligence did not cause plaintiff's injuries. The jury made no apportionment of negligence between defendants and mother, as an alleged nonparty at fault.

Plaintiff appeals, contending primarily that the trial court erred by permitting defendants to designate mother as a nonparty at fault.

## I. Designation of Mother as a Nonparty at Fault

■ Pursuant to section 13–21–111.5, C.R.S.2007, in a civil action based on negligence or strict liability, plaintiffs and defendants may designate nonparties as being wholly or partially at fault, with the finder of fact ultimately considering the percentage of a nonparty's negligence in apportioning liability. *See Inland/Riggle Oil Co. v. Painter*, 925 P.2d 1083, 1085 (Colo.1996).

Prior to trial, plaintiff moved to strike defendants' designation of mother as a nonparty at fault, arguing, as she does on appeal, that the negligence of a parent cannot be imputed or considered if it will bar a child's recovery. The trial court disagreed, and plaintiff contends that this was error.

We review de novo as a question of law whether the trial court properly allowed nonparty designation of plaintiff's mother. *See Pedge v. R.M. Holdings, Inc.*, 75 P.3d 1126, 1128 (Colo.App.2002). We conclude that the designation was proper.

### A. Is the Question Moot?

As an initial matter, we address and reject defendants' argument that, even if nonparty designation was improper, the error is harmless because the jury attributed no fault to mother.

■ If the designation of a nonparty is improper, it is error to admit evidence of the fault of the improperly designated nonparty. *See Chavez v. Parkview Episcopal Med. Ctr.*, 32 P.3d 609, 611–12 (Colo.App.2001); *Thompson v. Colo. & E. R.R.*, 852 P.2d 1328, 1330

(Colo.App.1993) ("[A] court may not allow the finder of fact to consider the negligence or fault of a nonparty unless such issue has properly been raised by the defendant in a pleading which complies with the requirements of § 13–21–111.5(3) . . . .").

An error is harmless unless it affects justice or the substantial rights of the parties. C.R.C.P. 61; *see Waneka v. Clyncke*, 134 P.3d 492, 494 (Colo.App.2005), *aff'd*, 157 P.3d 1072 (Colo.2007).

Here, the record shows that at the close of evidence, the jury was provided with two special verdict forms, A and B. It was instructed to use Special Verdict Form A if it found no defendant responsible for any damages sustained by plaintiff. Alternatively, the jury was instructed that if it found any defendant at fault and that such fault was the cause of plaintiff's injuries, it was to apportion damages between defendants and nonparty mother as set forth on Special Verdict Form B.

The jury returned Special Verdict Form A, finding that plaintiff had injuries, but that neither of the Dances was at fault for the injuries, and that although Dream Power was negligent, it did not cause any of plaintiff's injuries. Pursuant to instruction, the jury did not fill out Special Verdict Form B and, accordingly, made no percentage allocation of fault to defendants or nonparty mother.

Because mother had been designated as a nonparty at fault, the jury heard a significant amount of evidence and argument as to how mother's failure to supervise was a cause of plaintiff's injuries. However, because it was unnecessary for the jury, based on the instructions for use of Special Verdict Form A, to proceed to apportion fault under Special Verdict Form B, we cannot ascertain from the record whether the jury's decision to find no negligence or proximate cause on the part of defendants was influenced by evidence of mother's negligence in supervising her child.

Therefore, the absence of a jury finding on Special Verdict Form B of any fault of the mother does not, as defendants argue, definitively show that the nonparty designation was of no consequence, and we cannot assume that any error in the designation of

mother as a nonparty was necessarily harmless. Thus, we will address the issue.

### B. Is Nonparty Status of a Parent Prohibited?

■ Plaintiff contends that in a simple negligence action brought on behalf of his or her child, the parent cannot be designated as a nonparty at fault pursuant to section 13–21–111.5. We disagree.

#### 1. Section 13–21–111.5

Section 13–21–111.5 was enacted in Colorado in 1986 as part of comprehensive tort reform. It states, in relevant part:

(1) In an action brought as a result of a death or an injury to person or property, *no defendant* shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury, death, damage, or loss, except as provided by subsection (4) of this section.

(2) The jury shall return a special verdict ... determining the percentage of negligence or fault attributable to each of the parties and *any* persons not parties to the action of whom notice has been given ... to whom some negligence or fault is found and determining the total amount of damages sustained by each claimant....

(3) (a) *Any provision of the law to the contrary notwithstanding,* the finder of fact in a civil action may consider the degree or percentage of negligence or fault of a person not a party to the action, based upon evidence thereof, which shall be admissible, in determining the degree or percentage of negligence or fault of those persons who are parties to such action.

(Emphases added.)

By its plain and unambiguous terms, the statute provides that no defendant shall be liable for the negligence or fault of anyone else. Other than for co-conspirators, the statute contains no exceptions. *See* § 13–21–111.5(1). The statute further provides that the percentage of negligence or fault is to be determined for all parties and nonparties with proper notice. In addition, it applies in every simple negligence action, "[a]ny provision of the law to the contrary notwithstanding." *See Moody v. Corsentino,* 843 P.2d 1355, 1370 (Colo.1993) (in construing statutes, we give effect to the intent of the General Assembly by looking to the plain language of the statute).

■ The legislative policy announced in this statute is clear: A defendant in a negligence suit will not be made financially responsible for any fault that is not the defendant's own. *See Bohrer v. DeHart,* 961 P.2d 472, 475 (Colo.1998) ("This legislative enactment 'rectifies the inequity' caused by the common law rule of joint and several liability whereby any one responsible party could have been liable for all losses which the plaintiff incurred."); *Barton v. Adams Rental, Inc.,* 938 P.2d 532, 535 (Colo.1997) (the purpose of the statute is "to cure the perceived inequity under the common law concept of joint and several liability whereby wrongdoers could be held fully responsible for a plaintiff's entire loss, despite the fact that another wrongdoer, who was not held accountable, contributed to the result"); *Miller v. Byrne,* 916 P.2d 566, 578 (Colo.App. 1995)(the intent of the statute is "to abolish the harsh effects of joint and several liability and substitute the rule that each wrongdoer is liable only for the portion of a plaintiff's injuries that is represented by the wrongdoer's percentage of fault").

#### 2. Parental Immunity Does Not Bar Designation as Nonparty Under Section 13–21–111.5

■ Colorado has adopted the qualified parental immunity doctrine, which provides that a child is barred from suing a parent for simple negligence. *Farmers Ins. Exch. v. Dotson,* 913 P.2d 27, 33, n. 6 (Colo.1996); *see also Trevarton v. Trevarton,* 151 Colo. 418, 420, 378 P.2d 640, 641 (1963) ("Generally speaking, an unemancipated minor child has no right of action against a parent ... unless a right of action is authorized by statute ...." (quoting 67 C.J.S. *Parent and Child* § 61b(2), at 787)).

The purposes of the doctrine are the "preservation of family harmony, the maintenance of legitimate parental authority and control,

and the safeguarding of family assets by protecting against asset depletion resulting from a judgment in favor of the child against the parent." *Schlessinger v. Schlessinger,* 796 P.2d 1385, 1389 (Colo.1990); *see also Horton v. Reaves,* 186 Colo. 149, 156, 526 P.2d 304, 308 (1974)(immunity waived for willful and wanton parental misconduct); *Terror Mining Co. v. Roter,* 866 P.2d 929, 933 (Colo.1994) (immunity waived when injury resulted from parental action in a "business or employment" capacity). Thus, although parents continue to owe a duty of care to their child, policy reasons bar a child's recovery against them. *See Trevarton,* 151 Colo. at 422, 378 P.2d at 642.

Although plaintiff suggests otherwise, we perceive no conflict between the parental immunity doctrine and the legislative goals of the pro rata statute. As relevant here, both deny a child's recovery for injuries attributable to the simple negligence of a parent. It does not undermine the policy of qualified parental immunity to forbid the allocation of financial responsibility for the otherwise nonrecoverable negligence of that parent to another defendant. *See In re Air Crash Disaster at Stapleton Int'l Airport,* 720 F.Supp. 1465, 1466 (D.Colo.1989) (applying similar logic to issue of nonparty designation of immune sovereign entity); *Miller,* 916 P.2d at 577–78 ("[A] defendant will still only be 'liable' for such defendant's share of the whole 'liability' because it shoulders only the amount of negligence or fault that properly 'belongs' to it, while designated nonparties who owe a duty and but for immunity would be 'liable' to the plaintiff are charged with the balance."); *see also Doering v. Copper Mountain, Inc.,* 259 F.3d 1202, 1215–16 (10th Cir.2001) (holding, under Colorado law, that an immune parent could be designated a nonparty at fault); Kurt G. Stiegelmeier, *Designation of Immune, Nonliable and Unknown Nonparties,* 22 Colo. Law. 31, 33 (Jan. 1993) ("Given the broad language of the pro-rata liability statute, there appears to be no reason why [Colorado appellate courts] should not permit designation of nonparties who are immune under these common law and statutory doctrines [such as spousal and inter-familial immunity]."); Robert E. Benson, *Application of the Pro Rata Liability,*

*Comparative Negligence and Contribution Statutes,* 23 Colo. Law. 1717, 1720 (Aug. 1994).

3.  That Negligence of Parent Is Not Imputable to Child Does Not Bar Parent's Nonparty Designation Under Section 13–21–111.5

▮ Nonetheless, even though in Colorado a child may not recover against a parent for simple negligence, plaintiff points out that Colorado law also precludes imputing a parent's negligence to his or her minor child. *See, e.g., Francis ex rel. Goodridge v. Dahl,* 107 P.3d 1171, 1173–74 (Colo.App.2005). Thus, plaintiff argues that a parent's nonparty designation should not be permitted because presenting to a jury evidence of a parent's negligence effectively imputes that negligent conduct to the child.

However, as the trial court correctly determined, nonparty designation concerns the independent negligence of a parent; it does not attribute the negligence of the parent to the child. Indeed, here, the jury was instructed that the negligence of nonparty mother was an affirmative defense and that plaintiff, as a child under seven, was "incapable of negligence." *Cf. Tucker v. Gorman,* 944 P.2d 653, 656 (Colo.App.1997) (negligence of Medicaid recipient cannot be imputed to the state to deny latter's claim, but that does not prevent recipient's negligence from being considered in determining the degree or percentage of negligence of the defendant under section 13–21–111.5(1) ), *aff'd on other grounds,* 961 P.2d 1126 (Colo.1998).

Moreover, to the extent plaintiff contends that designation of an otherwise immune parent as a nonparty under section 13–21–111.5 is improper because the practical effect may be to bar a child's recovery against other tortfeasors because of his or her parent's negligence, we disagree. As discussed, the plain terms of the statute precisely require that the determination of a nonparty's fault may completely or partially deny a plaintiff recovery, even if the plaintiff is, as here, a minor child. *See Barton,* 938 P.2d at 536 (under the pro rata statute, a defendant may "reduce the amount of damages for which [he

or she] will be liable by demonstrating another person's fault, without that person necessarily being joined as a defendant"); *Harvey v. Farmers Ins. Exch.*, 983 P.2d 34, 37 (Colo.App.1998) ("a designated nonparty at fault is not liable for the amount of the judgment apportioned to it"), *aff'd*, 5 P.3d 280 (Colo.2000); *cf. Watson v. Reg'l Transp. Dist.*, 762 P.2d 133, 140–41 (Colo.1988) ("The possibility that one joint tortfeasor may not be able to respond in damages is simply one inherent limitation on the effectiveness of the contribution act to achieve perfect equity."); *Principal Mut. Life Ins. Co. v. Progressive Mountain Ins. Co.*, 1 P.3d 250, 256 (Colo.App.1999)(observing, in the context of qualified parental immunity, that "when a child is injured by a parent's negligence," the child may be "left with no remedy," but the "result is nevertheless not deemed absurd because of the public policy considerations that led to recognition of [such] immunity"), *aff'd*, 27 P.3d 343 (Colo.2001).

## II. Premises Liability

Plaintiff also contends that the trial court erred by instructing the jury to consider the Dances' liability under the premises liability statute, section 13–21–115, C.R.S. 2007, rather than under a theory of negligence. However, a plaintiff may recover against a landowner for injury occurring on that land only as provided under the premises liability statute, and not under any common law theory. *See Vigil v. Franklin*, 103 P.3d 322, 331 (Colo.2004) (premises liability statute preempted common law duties owed by property owners to those injured on their property).

Here, because the dog's biting of plaintiff was either an "activity conducted" or a "circumstance existing" on the Dances' property, the premises liability statute was the exclusive remedy under which plaintiff could recover against the Dances, and, therefore, the court properly so instructed the jury. *See Wilson v. Marchiondo*, 124 P.3d 837, 839 (Colo.App.2005) (in a dog-bite case occurring on defendant's property, plaintiff's only means to recover is through the premises liability statute).

We do not address section 13–21–124, C.R.S.2007 (creating statutory civil action against dog owners for death or serious bodily injury), because it is effective only for acts occurring on or after April 21, 2004 and, therefore, inapplicable here.

## III. Evidentiary Rulings

A trial court's rulings on evidence are reviewed under an abuse of discretion standard. *See Wark v. McClellan*, 68 P.3d 574, 578 (Colo.App.2003). Even if error occurs, we will not reverse if the error was harmless and not prejudicial to a substantial right of an aggrieved party. *Martin v. Minnard*, 862 P.2d 1014, 1018 (Colo.App.1993).

### A. Mother's Alleged Alcohol Consumption

Plaintiff argues that the trial court abused its discretion by allowing evidence of mother's alleged alcohol consumption on the day plaintiff was injured. We disagree.

Evidence that logically tends to prove or disprove a fact in issue or that sheds light upon a matter contested is relevant, and the trial court has considerable discretion in determining the logical relevance of evidence. *See* CRE 401; *Wark*, 68 P.3d at 578.

Evidence of alcohol consumption may be relevant to an individual's ability to assess a potentially dangerous situation or to remember events leading up to an incident. *See Wark*, 68 P.3d at 580 ("[F]ather's blood alcohol level was relevant to his ability to judge whether the driver could drive safely and, accordingly, was relevant to parents' comparative negligence."); *Grogan v. Taylor*, 877 P.2d 1374, 1385 (Colo.App.1993)(evidence of alcohol consumption permitted to show impairment of memory surrounding tort), *rev'd on other grounds*, 900 P.2d 60 (Colo.1995).

Here, plaintiff filed a motion in limine before trial to exclude evidence of mother's alleged use of alcohol on the day of plaintiff's injury. The trial court postponed ruling on the motion until after presentation of possible evidence as to mother's lack of supervision of plaintiff. At trial, after Terry Dance testified that he had seen plaintiff in differ-

ent parts of his home and backyard which were neither near to nor visible from where mother was seated, the court allowed defendants to introduce evidence of mother's alleged alcohol consumption.

Under these circumstances, the trial court did not abuse its discretion.

### B. "Character" Evidence of the Dog

■ We also disagree with plaintiff that the court erroneously admitted evidence of the dog's "good character."

In order for the Dances to be liable under the premises liability statute, the jury was required to find that their conduct constituted an "unreasonable failure to exercise reasonable care with respect to dangers created by the landowner of which the landowner actually knew." § 13–21–115(3)(b)(I), C.R.S. 2007; *Wright v. Vail Run Resort Cmty. Ass'n*, 917 P.2d 364, 365 (Colo.App.1996). Thus, here, plaintiff had to prove that the dog possessed dangerous or vicious propensities and that the Dances had knowledge of those propensities. *See Wilson*, 124 P.3d at 841 (issue under premises liability statute is "whether [defendant] had actual knowledge of the dog's allegedly vicious nature"); *see also Sandoval v. Birx*, 767 P.2d 759, 761 (Colo.App.1988)(defendant's knowledge of dog's viciousness is a question of fact for jury).

At trial, the parties disputed whether the dog was vicious or dangerous. Thus, evidence relating to the dog's temperament was relevant to that issue. *See Sandoval*, 767 P.2d at 760–61 (when there is conflicting evidence at trial of whether a dog has vicious tendencies, evidence of a dog's behavior after an incident is appropriate); *Marks v. Columbia County Lumber Co.*, 77 Or. 22, 149 P. 1041, 1042–43 (1915) (same); *see also Butler v. Pantelkoek*, 231 Or. 563, 373 P.2d 614, 616 (1962) (when viciousness not conclusively established, evidence of a dog's good nature is "admissible to rebut any unfavorable inference which the jury might draw" from the plaintiff's evidence).

Also, evidence of the dog's nature prior to the biting was properly admitted to determine whether the Dances knew of the dog's alleged propensity to be violent. *See Wilson*, 124 P.3d at 841; *Sandoval*, 767 P.2d at 760.

■ Plaintiff asserts, nevertheless, that because CRE 406 and 608 prohibit character or habit evidence, the trial court erred in denying her motion in limine. In that motion, plaintiff requested that the trial court preclude evidence of the dog's "good character" to counter evidence of its prior bad behavior. We disagree.

CRE 406 and 608 are inapplicable here. As the trial court pointed out: "Waldo is a dog. The rules of evidence pertaining to witnesses and parties do not apply." *See* CRE 406 ("Evidence of the habit of a *person* or of the routine practice of an *organization*, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the *person or organization* on a particular occasion was in conformity with the habit or routine practice." (emphasis added)); CRE 608 (regarding character evidence and conduct of a *witness*); *see also* CRE 601 ("Every *person* is competent to be a *witness* except as otherwise provided in these rules, or in any statute of the State of Colorado." (emphasis added)).

### IV. Punitive Damages Request

Finally, plaintiff contends that the trial court erred in denying her motion to amend the pleadings to include a claim for punitive damages against Dream Power for failing to disclose two incidents of bad behavior by the dog that occurred before the Dances adopted him.

However, because the jury ultimately found Dream Power was not at fault and, thus, owed no actual damages to plaintiff, we conclude any error in refusing plaintiff's motion was harmless. *See* § 13–21–102(1)(a), C.R.S.2007 ("The amount of such reasonable exemplary damages shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party."); *see also White v. Hansen*, 837 P.2d 1229, 1237 (Colo.1992) ("We find no basis for concluding that the legislature intended to allow recovery for exemplary damages when

the defendant is not liable for actual damages.").

The judgment is affirmed.

Judge WEBB and Judge NEY * concur.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2007.