2012 COA 182

**Renee LEGRO and Stephen Legro, Plaintiffs–Appellants,**

**v.**

**Samuel ROBINSON and Cheri Robinson, Defendants–Appellees.**

**No. 11CA1403.**

Colorado Court of Appeals,
Div. III.

Oct. 25, 2012.

Rehearing Denied Nov. 21, 2012.

Bloch & Chapleau, LLC, Joseph D. Bloch, Trenton J. Ongert, Denver, Colorado, for Plaintiffs–Appellants.

The Ross–Shannon Law Firm, P.C., Michael O. Frazier, Christopher J. Metcalfe, Lakewood, Colorado, for Defendants–Appellees.

Opinion by Judge RICHMAN.

¶ 1 Plaintiffs, Renee and Stephen Legro, appeal the district court's entry of summary judgment in favor of defendants, Samuel and Cheri Robinson. The Legros also appeal the court's denial of their motions to amend their complaint and to enforce an alleged settlement agreement. We affirm the summary judgment in part and reverse it in part; decline to address the motion to amend; affirm the order denying enforcement of a settlement agreement; and remand the case with directions.

## I. Background

¶ 2 The following facts are either undisputed or accepted as true for purposes of this appeal. On July 9, 2008, Renee Legro was participating in a bicycle race sponsored by the Vail Recreation District when she was attacked by two of the Robinsons' predator control dogs and sustained significant injuries. The attack occurred on a public road in the White River National Forest. The Robinsons held a permit, issued by the United States Forest Service, to graze sheep in an area encompassing the site of the attack. The Vail Recreation District also held a per-

mit to hold the race on the road where Renee Legro was riding.

¶ 3 The Legros filed a complaint alleging negligence, negligence per se, loss of consortium, and strict liability pursuant to the civil dog bite statute, § 13–21–124, C.R.S.2012.

¶ 4 The Robinsons filed a motion for summary judgment, asserting that all the Legros' common law claims were barred by the premises liability act (PLA), which provides in relevant part:

> In any civil action brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conducted or circumstances existing on such property, the landowner *shall be liable only* as provided in subsection (3) of this section.

§ 13–21–115(2), C.R.S.2012 (emphasis added). The Robinsons also argued that they could not be held liable under the dog bite statute because of the predator control dog exclusion, which provides as follows:

> A dog owner shall not be liable to a person who suffers bodily injury ... from being bitten by the dog ... [w]hile the dog is working as a ... predator control dog on the property of or under the control of the dog's owner.

§ 13–21–124(5)(f), C.R.S.2012.

¶ 5 On May 25, 2011, the district court granted the Robinsons' motion, concluding as follows: (1) the Robinsons indisputably were "landowners" for purposes of the PLA, and therefore the Legros' common law claims were abrogated by that statute; (2) the Legros had not pled any claim under the PLA; and (3) assuming the PLA did not bar the Legros' statutory dog bite claim, the Robinsons were immune from liability based on the predator control dog exclusion of that statute.

¶ 6 On the day the court issued its ruling, the Legros filed a motion to reconsider the summary judgment order containing a request that the case proceed to trial as a PLA case and a separate motion to file an amended complaint stating a PLA claim. The district court never ruled on the Legros' mo-

tions, and therefore they were denied as a matter of law. *See* C.R.C.P. 59(j).

¶ 7 Twelve days after the summary judgment order, the Legros filed a motion to enforce a settlement agreement purportedly accepted by the Legros less than two hours after the court granted summary judgment. Initially, that motion was not decided by the district court. However, after a remand by this court for the express purpose of deciding that motion, the district court denied it on January 30, 2012. This appeal followed.

## II.  Issues on Appeal

¶ 8 The Legros appeal the district court's grant of summary judgment, its denial of their motion to amend, and its denial of their motion to enforce the alleged settlement agreement.

### A.  Summary Judgment

#### 1.  Standard of Review

¶ 9 We review de novo a district court's grant of summary judgment based on a determination of a question of law. *Hopp & Flesch, LLC v. Backstreet,* 123 P.3d 1176, 1180–81 (Colo.2005). "Summary judgment is appropriate when the pleadings and supporting documentation demonstrate that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law." *West Elk Ranch, L.L.C. v. U.S.,* 65 P.3d 479, 481 (Colo.2002). "The party opposing summary judgment is entitled to the benefit of all favorable inferences that may be drawn from the facts contained in the record." *Brawner–Ahlstrom v. Husson,* 969 P.2d 738, 741 (Colo. App.1998).

¶ 10 We also review de novo questions of statutory interpretation. *Klinger v. Adams County Sch. Dist. No. 50,* 130 P.3d 1027, 1031 (Colo.2006). "Our primary duty in construing statutes is to give effect to the intent of the General Assembly, looking first to the statute's plain language." *Vigil v. Franklin,* 103 P.3d 322, 327 (Colo.2004). We construe statutory provisions as a whole and, whenever possible, give effect to every word and term contained therein. *Board of Coun-*

*ty Commis. v. Vail Associates, Inc.,* 19 P.3d 1263, 1273 (Colo.2001).

### 2. Application of PLA and Dog Bite Statute

¶ 11 Application of the PLA here depends on whether the Robinsons qualify as landowners under the statute. If so, we must also decide whether the PLA abrogates the claims under the dog bite statute, or whether, as a more recent and specific statute, the dog bite statute prevails over the PLA. *See* § 2–4–205, C.R.S.2012.

#### a. The Robinsons Are PLA Landowners

¶ 12 The Legros argue that the district court erred in concluding that the Robinsons were PLA landowners and, as a result, dismissing their common law negligence claims under section 13–21–115(2). We are not persuaded.

¶ 13 The term "landowner" is broadly defined in the PLA:

> For purposes of this section, "landowner" includes, without limitation, an authorized agent or person in possession of real property and a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property.

§ 13–21–115(1), C.R.S.2012.

¶ 14 In *Pierson v. Black Canyon Aggregates, Inc.,* 48 P.3d 1215, 1220 (Colo.2002), our supreme court held that a landowner is any person in possession of real property and that such possession need not be to the exclusion of all others. The court also held that under the second clause of the definition, a landowner includes "someone who is legally entitled to be on the real property and ... is responsible for creating a condition on real property or conducting an activity on real property that injures an entrant." *Id.* at 1221. There, an independent contractor performing gravel crushing operations pursuant to an agreement with the property owners qualified as a "landowner" under the PLA. *Id.*

¶ 15 In *Henderson v. Master Klean Janitorial, Inc.,* 70 P.3d 612, 615 (Colo.App.2003), a division of this court held that a janitorial contractor of a building owner qualified as a landowner. The plaintiff there slipped on water left on the stairs of the building while the contractor was performing janitorial services. The division concluded that the contractor was a person "legally responsible for creating a condition or conducting an activity on the property that allegedly resulted in injury to [the] plaintiff." *Id.*

¶ 16 Finally, in *Paris v. Dance,* 194 P.3d 404, 409 (Colo.App.2008), a division of this court concluded that a dog biting a plaintiff was either an "activity conducted" or a "circumstance existing" on a landowner's property.

■ ¶ 17 Pursuant to their permit to graze sheep where the attack occurred, the Robinsons had a legal entitlement to be on the property, and they were responsible for creating a condition, or conducting an activity, on the property that injured Renee Legro. Thus, under the applicable case law, we are constrained to agree with the district court's conclusion that they qualify as PLA landowners.[1]

#### b. Reconciling the PLA and the Dog Bite Statute

¶ 18 The Robinsons' status as landowners means that if the PLA otherwise applies, the district court correctly determined that section 13–21–115(2) abrogates the Legros' common law claims. *See Vigil,* 103 P.3d at 331 (concluding that the PLA extinguished common law landowner duties). However, the district court did not determine whether section 13–21–115(2) abrogates the Legros' claims under the dog bite statute, as its order assumes both statutes can be applied. Moreover, the district court did not consider whether the dog bite statute, as a special provision, may prevail over the PLA. Because these issues may arise on remand, we further conclude, for the reasons discussed below, that the PLA does not abrogate the

---

**1.** Nothing in the PLA precludes its application to landowners of public property, and it has been so applied. *See Springer v. City & County of Denver,* 13 P.3d 794 (Colo.2000); *Anderson v. Hyland Hills Park & Recreation Dist.,* 119 P.3d 533 (Colo.App.2004).

Legros' statutory claim, nor does the dog bite statute prevail over the PLA; rather, both statutes may be given effect in this case.

¶ 19 The dog bite statute allows

a person who suffers serious bodily injury ... from being bitten by a dog *while lawfully on public or private property* ... to recover economic damages against the dog owner regardless of the viciousness or dangerous propensities of the dog or the dog owner's knowledge or lack of knowledge of the dog's viciousness or dangerous propensities.

§ 13–21–124(2), C.R.S.2012 (emphasis added). In essence, the statute imposes strict liability for economic damages upon a dog owner for any dog bite causing serious injury, subject to specified exclusions. The exclusion pertinent to this case provides that a dog owner will not be liable if a person is bitten "[w]hile the dog is working as a ... predator control dog on the property of or under the control of the dog's owner." § 13–21–124(5)(f).

¶ 20 Although it is well established that section 13–21–115(2) of the PLA abrogates common law negligence claims against landowners, no Colorado case has addressed the effect of that provision in circumstances where the dog bite statute may also be applicable. *See Ganser v. Ganser*, 2008 WL 3893751, *2–3 (D.Colo.2008) (unpublished summary judgment order) (assuming without deciding that the dog bite statute applied without regard to the PLA).

¶ 21 Before the dog bite statute was enacted, a division of this court concluded that the PLA provided the exclusive remedy for a victim bitten by a dog. *Paris*, 194 P.3d at 409 ("[B]ecause the dog's biting of plaintiff was either an 'activity conducted' or a 'circumstance existing' on the [defendants'] property, the premises liability statute was the exclusive remedy under which plaintiff could recover."). However, that case was related to events which occurred before the dog bite statute was enacted, and specifically declined to address the effect of the dog bite statute. *Id.; see also Wilson v. Marchiondo*, 124 P.3d 837, 840 (Colo.App.2005).

¶ 22 The Robinsons cite no authority, and we are aware of none, for the proposition that section 13–21–115(2) necessarily abrogates *statutory* dog bite claims. As noted by the Colorado Supreme Court, "the rule of decision in *Vigil* [was] limited to the abrogation of common law doctrines affecting the duties of landowners." *Union Pacific R.R. Co. v. Martin*, 209 P.3d 185, 189 (Colo.2009). The PLA's abrogation of common law negligence claims was held to be inapplicable to statutory claims. *Id.; see also Calvert v. Aspen Skiing Company*, 700 F.Supp. 520, 521 (D.Colo.1988) (concluding that PLA does not abrogate claims brought under Ski Safety Act).

¶ 23 To conclude that the PLA precludes the Legros' statutory claim would substantially undermine the dog bite statute, which expressly applies to persons bitten "while lawfully on public or private property" and establishes strict liability regardless of whether the dog owner is also a landowner. Other provisions of the dog bite statute indicate that the General Assembly intended to immunize dog owners, in some circumstances, from liability for bites that occur on their own property. For example, a dog owner is expressly not liable if the victim is unlawfully on the dog owner's property. § 13–21–124(5)(a), C.R.S.2012. Furthermore, a dog owner is not liable for a bite that occurs on his or her own property if the property is clearly marked with a "no trespassing" or "beware of dog" sign. § 13–21–124(5)(b), C.R.S.2012. Such provisions would have to be entirely read out of the dog bite statute if only the PLA's statutory duties—unreasonable failure to warn or to exercise reasonable care—applied in these situations. Instead, we conclude that section 13–21–115(2) does not abrogate claims that could also be brought under the dog bite statute.

¶ 24 Our analysis does not end here as we must still consider whether the statutes are in conflict:

If a general provision conflicts with a special or local provision, it shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general

provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.

§ 2–4–205.

¶ 25 We conclude that here the statutes can be construed harmoniously to give effect to both. Under the dog bite statute, a dog owner may be held strictly liable for economic damages if the dog bites a person who is lawfully on public or private property. Thus, a plaintiff lawfully on public or private property may seek economic damages from the dog owner under the dog bite statute on a theory of strict liability; a defendant may avoid liability by proving one of the statutory exclusions. However, if the incident occurs on property where the defendant also qualifies as a PLA landowner, the plaintiff may seek damages beyond economic damages under the PLA; the landowner may avoid liability for such damages by demonstrating that he or she met the duties imposed under the PLA.

¶ 26 Moreover, the dog bite statute expressly provides that nothing in it shall be construed to "[a]ffect any other cause of action predicated on other negligence ... or other theories." § 13–21–124(6)(a), C.R.S. 2012. Even though the PLA supplanted common law negligence claims against landowners, see Vigil, 103 P.3d at 331, the claims allowed under the PLA are "predicated" on other types of negligence. For example, a PLA claim requires an invitee to show that his or her damages were caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which the landowner actually knew or should have known. Similarly, a licensee asserting a PLA claim must show that the landowner unreasonably failed to (1) exercise reasonable care with respect to dangers created by the landowner of which he or she actually knew, or (2) warn of dangers of which he or she knew. § 13–21–115(3)(b) & (c), C.R.S.2012. Because these standards codified the duties of landowners and the status of entrants on property that existed at one time under the common law of negligence, see Vigil, 103 P.3d at 326, they are actions "predicated" on negligence or "other theories."

¶ 27 Therefore, we conclude that both the dog bite statute and the PLA may be applied here, and, on remand, if the Legros seek to amend their complaint by adding a PLA claim, such claim would not be futile as a matter of law.

### 3. Predator Control Dog Exclusion

¶ 28 The district court concluded that the undisputed facts supported application of the predator control dog exclusion of the dog bite statute to grant summary judgment for the Robinsons. The Legros contend that this conclusion was erroneous, and we agree.

¶ 29 A dog owner is not liable to a person who suffers injury from a dog bite "while the dog is working as a ... predator control dog on the property of or under the control of the dog's owner." § 13–21–124(5)(f). There was no factual dispute in the district court that the Robinsons' dogs were predator control dogs. The parties disputed whether the site of the attack was "property of or under the control of" the Robinsons. As there was no dispute that the Forest Service property was not owned by the Robinsons, the dispositive issue is whether the property was under the Robinsons' "control" owing to their grazing activities there.

¶ 30 In order to apply this exclusion, we must first construe the statutory language and then apply our interpretation to the facts of this case. Because this case was decided on a motion for summary judgment, we must view those facts in the light most favorable to the Legros. See Weisbart v. Agri Tech, Inc., 22 P.3d 954, 956 (Colo.App.2001).

### a. Construction of Statutory Language

¶ 31 Because our primary goal in construing statutory language is to determine and give effect to the intent of the General Assembly, we first look to the plain and ordinary meaning of the words. State v. Nieto, 993 P.2d 493, 500 (Colo.2000). If the language is plain and the meaning is clear, it must be applied as written, and we need not resort to any other method of statutory interpretation. Id. If, however, the terminology is ambiguous, we may resort to other means of interpretation, including consideration of the legislative history. Id. at 502

("Where a statute is ambiguous, a court may consider several factors in discerning the intent of the legislature, including the legislative history, the General Assembly's declaration of purpose, and the object sought to be attained."); *see also* § 2–4–203, C.R.S.2012.

¶ 32 Here, the applicability of the exclusion depends on the meaning of the phrase "under the control of." Although both parties advance plausible alternative definitions of property that is "under the control of" a dog owner, we decline to adopt them. The Legros argue that the phrase must mean only property "owned" by the dog owner.[2] The Robinsons argue the condition "under the control of" is satisfied if the dog owner has any possessory interest in the property.[3] We find neither argument persuasive.

¶ 33 In other sections, the dog bite statute uses the phrases "owner of the property," "his or her own property," and "property of the dog owner" to define exclusions from liability for dog bites that occur on property owned by the dog owner. *See* § 13–21–124(4) & (5)(b), C.R.S.2012. Although the statute employs slightly different terminology, in each instance the language plainly refers to property owned by the dog owner. However, the phrase "under the control of" appears nowhere else in the statute. Contrary to the Legros' suggestion, we conclude that the phrase is not limited to property owned by the dog owner.

¶ 34 Words and phrases in a statute shall be read in context and construed according to the rules of grammar and common usage. § 2–4–101, C.R.S.2012. In the context of section 13–21–124(5)(f), we conclude that a proper reading of the statute is that the exclusion applies if the property is under that person's control, even if that person does not own the property. The same reading could have been achieved (and perhaps rendered more clear) by the addition of two commas, as follows: "on the property of[,] or under control of[,] the dog's owner." *See Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 597 (Colo.2005) ("[W]hen examining a statute's plain language, we give effect to every word and render none superfluous.").

¶ 35 We also reject the Robinsons' proposed interpretation. They argue that the interpretive focus must be on the phrase "property of," without regard to the words "under the control of." They contend that "property of" does not require ownership of property (and they admit they do not "own" the property where the attack occurred), but that the phrase may also include any possessory interest in the property, including a grazing permit or lease. We agree that a possessory interest may, depending on the nature of the interest, establish "control of" a property. Yet, because the Robinsons do not address the separate phrase "under the control of," we find their proposed interpretation is incomplete and, consequently, inadequate.

¶ 36 The statute contains no definition of the phrase "under the control of," and we are aware of no Colorado case that has interpreted this phrase. To ascertain the meaning of undefined words in a statute, appellate courts frequently look to the dictionary. *People v. Thoro Products Co.*, 70 P.3d 1188, 1194 (Colo.2003). And to properly in-

---

**2.** In support of their argument, they sought to submit an affidavit from the bill's sponsor, which the district court rejected as untimely. Nonetheless, we do not read the legislative history in the manner suggested by the Legros. Although the legislative history contains passing references to working dogs on "private property" and "property of the dog's owner," that does not shed any light on the meaning of the phrase "under the control of" as it is used in the statutory provision. Nor do we consider the affidavit, which postdates the enactment of the dog bite statute, helpful. *See Mason Jar Restaurant v. Indus. Claim Appeals Office*, 862 P.2d 1026, 1030 (Colo. App.1993) ("The post-enactment recollections of a legislator do not constitute legislative history and are not admissible to establish legislative intent.").

**3.** At oral argument, the Robinsons suggested that the phrase "under the control of" relates to "control" of the dog rather than of the property where the bite occurred. According to this interpretation, the exclusion would apply if the dog was "under the control of the dog's owner" at the time the bite occurred. We reject this interpretation because it would be illogical to conclude that the General Assembly intended to exclude from liability the owner of a dog that bites a person when the dog is under the owner's control.

terpret a statutory term or phrase, we look to the context in which it is used and try to harmonize it with the other parts of the statute. *See Farmers Ins. Exchange v. Bill Boom Inc.*, 961 P.2d 465, 470 (Colo.1998) ("[A] statute should be construed so as to give consistent, harmonious, and sensible effect to all of its parts.").

¶ 37 *Black's Law Dictionary* 378 (9th ed. 2009) defines "control" as "the power or authority to manage, direct, or oversee." Similarly, *Webster's Third New International Dictionary* 496 (2002) defines control as "power or authority to guide or manage." Thus, the phrase "property under the control of a person" reasonably denotes property that is subject to the person's power or authority to guide, manage, direct, or oversee.

¶ 38 In our view, the purpose of the statute is to hold dog owners strictly liable in the event a dog bites someone and causes serious injury. Accordingly we understand "control" of property to mean, at a minimum, sufficient control over the property such that a dog owner has the right to exclude persons from the property.

¶ 39 Other exclusions in the dog bite statute support our understanding. A dog owner is not held liable if a trespasser is bitten on private property, or if a posted sign informs non-trespassers of the risk. *See* § 13–21–124(5)(a) & (b), C.R.S.2012. This framework indicates a legislative intent to strike a balance between private property rights of dog owners—excluding them from liability if a person is bitten while acting unlawfully or after being warned of the potential danger—and their responsibility for bites that nonetheless occur when the person is bitten while abiding by applicable laws.

### b. Application of Exclusion

¶ 40 Applying this understanding, we first note that no evidence supports the district court's conclusion that the Robinsons had a lease on the property where the attack occurred. Rather, the record shows that the Robinsons operated under a nonexclusive permit to graze sheep.[4] Thus, we are not presented with a case where lessees had exclusive possession of the property, which was therefore under their control.

¶ 41 Instead, the record reflects that the attack occurred in the White River National Forest on land where both the Robinsons and Renee Legro were engaged in lawful activities, each pursuant to a U.S. Forest Service permit. We conclude that having a permit to graze sheep where the attack occurred does not establish the Robinsons' control of the property within the meaning of the exclusion.

¶ 42 The Robinsons do not dispute that they lacked sufficient control over the site of the attack to exclude others from it or to protect others from being bitten by their dogs. The record shows that the area was open to hikers, bikers, horseback riders, and off-road vehicle users. Indeed, Renee Legro was on the property pursuant to a separate permit authorizing the bicycle race. Further, the record also shows that the Robinsons' permit was subject to being suspended or cancelled if they failed to comply with numerous terms and conditions imposed by the Forest Service. Finally, as the Robinsons' counsel agreed at oral argument, the Robinsons had no right under the permit to exclude a person from walking among or going near the flock of sheep.

¶ 43 Yet, the Robinsons argue that the property was under their control because their permit required them to monitor vegetation levels, weeds, and invasive species; report wild animals, explosives, and poisons; and maintain existing fences, springs, and other improvements. It is undisputed, however, that these management activities did not give them sufficient control to exclude others from the property. Nor does the Robinsons' obligation to pay taxes on their interest in the property change the analysis, since the payment of taxes is not a type of

4. The permit apparently was issued pursuant to the Taylor Grazing Act, 43 U.S.C. § 315b, which provides that the issuance of a grazing permit "shall not create any right, title, interest, or estate in or to the lands." *See also* 36 C.F.R. § 222.3(b) (7–1–12 ed.) ("Grazing permits and livestock use permits convey no right, title, or interest held by the United States in any lands or resources.").

control that allows exclusion of others from the property.

¶ 44 Because the attack occurred on public property that was not owned by the Robinsons and because holding a grazing permit, without more, does not establish control within the meaning of the predator dog exclusion, the district court erred in concluding that the undisputed facts warranted the entry of summary judgment in favor of the Robinsons under that exclusion. Though control of property might be established by other evidence, on the record before us we must reverse the summary judgment as to the Legros' statutory dog bite claim and remand for further proceedings consistent with this opinion.

## B. Motion to Amend

¶ 45 When the district court issued its summary judgment ruling, the Legros sought leave to amend their complaint to state a PLA claim, but the court implicitly denied their motion by failing to rule on it. *See* C.R.C.P. 59(j). Although the Legros seek to appeal the denial of their motion, we conclude that we need not reach that issue. Because we are remanding the case to the district court for further proceedings as to the claim under the dog bite statute, the Legros may again move to amend their complaint on remand.

## C. Alleged Settlement Agreement

¶ 46 The facts underlying the Legros' motion to enforce the alleged settlement agreement are not in dispute. Settlement negotiations were ongoing as of May 16, 2011, when the Robinsons made a statutory offer, pursuant to 13–17–202, C.R.S.2012, to pay $638,500 "to fully and finally resolve all claims that have, or could have, been asserted by the plaintiff, RENEE LEGRO, in this lawsuit" and left open a second offer of $5,000 to resolve any claims by Stephen Legro, for a total of $643, 500. By letter dated May 20, 2011, the Legros demanded a settlement in the amount of $1 million. On May 24, 2011, the Robinsons' insurance adjustor stated in a letter that the Robinsons were declining the Legros' counteroffer to settle for $1 million

but reiterated that the "current . . . $653, 500 offer to resolve all claims remains available."

¶ 47 On May 25, 2011 at 11:06 a.m., the district court granted the Robinsons' motion for summary judgment, and at 11:50 a.m., the Robinsons filed a notice withdrawing "any and all Statutory Offers made to Plaintiffs, including the Statutory Offer of Settlement served on Plaintiff Renee Legro on May 16, 2011." *See* § 13–17–202(1)(a)(V), C.R.S.2012. At 12:57 p.m., the Legros sent an e-mail purporting to accept the settlement offer of $653,500 contained in the May 24, 2011 letter.

¶ 48 On June 6, 2011, the Legros filed their motion to enforce the alleged settlement agreement, arguing that they manifested their intent to accept the offer within a reasonable time. The crux of their argument in their motion and on appeal is that the Robinsons' May 24 offer was not a statutory offer of settlement; thus, it was not withdrawn by the Robinsons and remained open when the Legros accepted it. We are not persuaded.

¶ 49 "The interpretation of a settlement agreement, like that of any contract, is a question of law that we review de novo." *Montoya v. Connolly's Towing, Inc.,* 216 P.3d 98, 102 (Colo.App.2008); *see also Sumerel v. Goodyear Tire & Rubber Co.,* 232 P.3d 128, 132 (Colo.App.2009) ("In contract cases, when the facts are undisputed and the pertinent documents are before us, we are not bound by the district court's findings and conclusions and may resolve the issues as a matter of law.").

¶ 50 Although statutory offers of settlement are governed by section 13–17–202, an offer made fourteen days or fewer before trial is not governed by this statute, and normal contract rules apply. *See* § 13–17–202(1)(a)(VI), C.R.S.2012. A court may enforce a settlement agreement only if it constitutes an enforceable contract. *Yaekle v. Andrews,* 195 P.3d 1101, 1111 (Colo.2008). "A contract is formed when one party makes an offer and the other accepts it, and the agreement is supported by consideration." *Sumerel,* 232 P.3d at 133.

¶ 51 For a number of reasons, we conclude that no agreement was reached in this instance. The May 24 offer constituted

the latest in a series of statutory offers and counter-offers between representatives for each party, even if it was not made within the time required by section 13–17–202. Nonetheless, the Robinsons effectively revoked it when they withdrew "any and all Statutory Offers made to Plaintiffs." *See* Restatement (Second) of Contracts § 42 (1981) ("Any clear manifestation of unwillingness to enter into the proposed bargain is sufficient [to constitute revocation].."); *see also Emmons v. Ingebretson*, 279 F.Supp. 558, 573 (N.D.Iowa 1968) ("An offer may be withdrawn by a communication prior to acceptance which expressly or by implication notifies the offeree that the offeror does not intend to perform the contract."). The withdrawal notice does not state that the Robinsons intended to leave any offers on the table after the district court granted summary judgment in their favor. Further, in the context of the negotiations taking place before the court's ruling, it makes little sense for the Legros to have believed that though the Robinsons expressly revoked the May 16 offer of $643,500, they intended not to revoke a pending offer of $653,500.

¶ 52 That the Robinsons' withdrawal motion refers to "statutory" offers does not require a different conclusion. Rather, the motion simply mirrors the language of the motions filed on May 16, which were titled, "Defendants' Statutory Offer of Settlement to Plaintiff Renee Legro Only" and "Defendants' Statutory Offer of Settlement to Plaintiff Stephen Legro Only." Because these offers totaled $643,500, it should have been apparent to the Legros that a motion to withdraw them would have been futile if the Robinsons intended to leave open a $653,500 offer.

¶ 53 Thus, based on the undisputed facts, no agreement was formed when the Legros made their purported acceptance, and the district court properly denied their motion to enforce it.

## III. Conclusion

¶ 54 Because the Robinsons are landowners and the PLA bars the Legros' common law claims, the summary judgment is affirmed as to those claims. Because the dog bite statute also applies and the undisputed facts do not support application of the predator control dog exclusion, the summary judgment as to that claim is reversed, and the case is remanded for further proceedings consistent with this opinion, including the opportunity for the Legros to amend their complaint to state a PLA claim. The district court's order denying the Legros' motion to enforce the alleged settlement agreement is affirmed.

Judge ROY and Judge DAILEY concur.