COLORADO COURT OF APPEALS                              **2016COA91**

Court of Appeals No. 14CA1259
City and County of Denver District Court No. 12CV2482
Honorable Herbert L. Stern, III, Judge

Martin Acierno, by and through his Co-Guardians, Kathleen Acierno and
Cheryl Acierno,

Plaintiff-Appellant and Cross-Appellee,

v.

Garyfallos Garyfallou, M.D.,

Defendant-Appellee and Cross-Appellant.

JUDGMENT AFFIRMED, ORDER REVERSED,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE BOORAS
Webb and J. Jones, JJ., concur

Announced June 16, 2016

Leventhal & Puga, P.C., Jim Leventhal, Hollynd Hoskins, David P. Masons,
Benjamin I. Sachs, Denver, Colorado, for Plaintiff-Appellant and Cross-Appellee

Hershey Decker, PLLC, C. Todd Drake, Lone Tree, Colorado, for Defendant-
Appellee and Cross-Appellant

¶ 1    Plaintiff, Martin Acierno, by and through his co-guardians, Kathleen Acierno and Cheryl Acierno, appeals the trial court's judgment entered on a jury verdict in favor of defendant, Garyfallos Garyfallou, M.D. (Dr. Garyfallou).  The trial court's judgment is affirmed.

¶ 2    Dr. Garyfallou cross-appeals the trial court's order denying, in its entirety, his motion for costs.  He contends that under section 13-16-105, C.R.S. 2015, an award of costs to a prevailing defendant is mandatory.  We agree and therefore reverse the trial court's order denying Dr. Garyfallou's request for costs.

## I.    Background

¶ 3    In 2010, Mr. Acierno was transported by ambulance to St. Anthony's North hospital with complaints of slurred speech and numbness in his left arm.

¶ 4    When Mr. Acierno arrived at the hospital, he was examined by Dr. Garyfallou, an emergency room physician.  By that time, many of Mr. Acierno's symptoms had dissipated.  However, because Mr. Acierno had suffered an earlier stroke, Dr. Garyfallou ordered a

computerized tomography (CT) scan.[1]  When the CT scan showed no signs of a brain bleed, Dr. Garyfallou admitted Mr. Acierno to St. Anthony's North and diagnosed him with a transient ischemic attack.  Dr. Garyfallou then sent Mr. Acierno for a magnetic resonance imaging[2] (MRI) and a magnetic resonance angiography[3] (MRA).

¶ 5    While he was in the MRI machine, Mr. Acierno exhibited rhythmic-like movement, intermittent left arm movement, and involuntary eye movement.  The nurse who was performing the MRI called Dr. Garyfallou to examine Mr. Acierno.  Dr. Garyfallou concluded that Mr. Acierno had most likely had a seizure, so he ordered seizure medicine.

¶ 6    A radiologist interpreted the MRI and MRA images.  He gave Dr. Garyfallou his opinion that the MRI showed "some atheroma, which is cholesterol, debris, chronic stuff in the blood vessels, and/or thrombus, which is a clot."  By that time, Dr. Garyfallou's

---

[1] A computerized tomography is a medical imaging procedure that utilizes cross-sectional images for diagnostic purposes.
[2] Magnetic resonance imaging refers to a procedure by which doctors can view internal structures of the body in detail, including the brain.
[3] Magnetic resonance angiography refers to a method of imaging that allows a doctor to view blood vessels.

shift had ended, so he passed off Mr. Acierno's care to another physician.

¶ 7    Shortly thereafter, Mr. Acierno was transferred to the primary stroke center at St. Anthony's Central hospital for a stroke assessment.

¶ 8    There, a neurologist diagnosed Mr. Acierno with a brainstem stroke. The stroke resulted in severe brain damage: Mr. Acierno now has quadriplegia and "locked in" syndrome, meaning that although he is cognitively intact, it is unlikely that he will regain any meaningful ability to move his body.

¶ 9    Mr. Acierno filed a medical malpractice suit against Dr. Garyfallou, his other treating physicians, and both hospitals. With respect to Dr. Garyfallou, Mr. Acierno alleged negligence in failing to diagnose a stroke that he had suffered before Dr. Garyfallou left the hospital.

¶ 10    With the exception of Dr. Garyfallou, all defendants settled. The case then proceeded with a jury trial on Mr. Acierno's negligence claims against Dr. Garyfallou. The jury returned a verdict in favor of Dr. Garyfallou, finding that he had not been negligent.

## II.    Mr. Acierno's Appeal

### A.    Motions for a Mistrial and a New Trial

¶ 11    Mr. Acierno contends that the trial court erred when it denied his motions (1) for a mistrial based on defense counsel's misconduct in closing argument and (2) for a new trial based on that same misconduct and other irregularities at trial.  We discern no abuse of discretion.

### 1.    Additional Background

¶ 12    Before closing argument, Mr. Acierno tendered the following jury instruction on the applicable standard of care:

> To determine whether such a physician's conduct was negligent, you must compare that conduct with what a physician having and using the knowledge and skill of physicians practicing in the same specialty or holding themselves out *as having the same special skill and knowledge*, at the same time, would or would not have done under the same or similar circumstances.

(Emphasis added.)  Defense counsel objected to the inclusion of the emphasized portion of the instruction.  The trial court overruled the objection and approved Mr. Acierno's proposed standard of care instruction.

¶ 13    During closing argument, defense counsel used a PowerPoint slide that omitted the portion of the standard of care instruction to which he had previously objected.  Mr. Acierno's counsel objected to the slide on the basis that it was a misstatement of the applicable standard of care.  The trial court responded, "The jury has the instructions.  [It] can review them."  Defense counsel then made the following argument: "Who is the expert of the same specialty that came in and told you about the standard of care in this case?  That's Dr. Rosenberg.  That's Dr. Burcham.  That's Dr. Hoffman.  All emergency room physicians."

¶ 14    Defense counsel ended his closing argument as follows:

> [Mr. Acierno's counsel] has also argued that Dr. Garyfallou's blaming people.  The only people you heard that blamed anybody in this case came from the plaintiff's side of the case.  Dr. Futrell and Dr. Jones blamed every one of those defendants that settled, and they blamed Dr. Garyfallou.  And [Mr. Acierno's counsel], who retained those experts, blamed every one of those doctors who settled.
>
> There are reasons that physicians settle cases that don't have anything to do with the standard of care. . . .  Dr. Garyfallou has courage, conviction, and confidence.  The courage to stand up before you and say my care was good.  Conviction that his care was appropriate.  And confidence that you as

5

> jurors will see that. Confidence that these other reasons for settling cases, runaway verdicts, runaway juries, media related to adverse care, will not cloud your judgment[.]

¶ 15    Mr. Acierno's counsel objected, arguing that defense counsel's comments were "completely inappropriate." The trial court sustained the objection, stating that the comments were "completely and utterly inappropriate, appealing to the passions and prejudices of the jury." It added that it was "shocked" by the argument.

¶ 16    The trial court then asked Mr. Acierno's counsel if he wanted the court to consider a motion for a mistrial. Mr. Acierno's counsel responded that he did, and the trial court said that it would take the motion under consideration.

¶ 17    The court then admonished defense counsel in front of the jury: "Jurors, there was an objection to [defense counsel's] last comments, that objection was sustained. Those comments are to be utterly and completely disregarded by you. They were inappropriate and do not belong in this type of a proceeding."

¶ 18    During a recess before rebuttal closing argument, Mr. Acierno's counsel made an additional record in regard to his motion

for a mistrial. He argued that defense counsel's (1) improper argument and (2) misstatement of the standard of care instruction warranted a mistrial. Mr. Acierno's counsel contended that the trial court's previous instruction and admonition were insufficient to cure the prejudice stemming from defense counsel's improper comments.

¶ 19    With respect to the improper comments, the trial court said that it was "not sure" that its previous admonition and instruction had been sufficient. Regarding the standard of care instruction, the trial court concluded that defense counsel had presented an "incomplete" version of the instruction, but that Mr. Acierno's counsel could "point that out on his own."

¶ 20    After the recess, the trial court, on its own initiative, addressed the jury: "Jurors, I apologize for the longer-than-anticipated break. I feel that I have no choice but to reiterate to you that certain of those comments, certain of the statements that I cautioned you against earlier by [defense counsel] were, in my view, beyond inappropriate and we've been discussing that." It again instructed the jury that the improper comments were "to be completely and utterly disregarded."

¶ 21 During rebuttal closing, Mr. Acierno's counsel argued,

> When [defense counsel] got up and told you and [represented the standard of care instruction], he had retyped the instruction and misrepresented the law to you. You have a copy of it.
>
> The second paragraph, 'To determine whether a physician's conduct was negligent, you must compare that conduct with what a physician having and using the knowledge and skill of physicians practicing in the same specialty' and that's where he stopped, but our job is not to stop, our job is to make sure you have the law, 'or holding themselves out as having the same special skill and knowledge, at the same time, would or would not have done under the same or similar circumstances.'

¶ 22 After trial, Mr. Acierno filed a written motion for a mistrial alleging defense counsel's misconduct. He also filed a motion for a new trial, under C.R.C.P. 59(d). In it, he reasserted his arguments related to his motion for a mistrial. He also argued that a number of irregularities had prevented him from receiving a fair trial. Specifically, Mr. Acierno contended that (1) witnesses gave testimony at trial that differed from their deposition testimony; (2) a defense witness violated the trial court's sequestration order; and (3) a juror slept during trial and was generally inattentive.

¶ 23    The trial court later held a hearing on Mr. Acierno's motion for a mistrial, at which both parties offered extensive argument as to whether the court should grant the motion.

¶ 24    Ultimately, the trial court denied Mr. Acierno's motion for a mistrial. In doing so, the court concluded that it should have sustained Mr. Acierno's counsel's objection to defense counsel's misstatement of the applicable standard of care. And it observed that defense counsel's "use of an abbreviated [s]tandard of [c]are [i]nstruction was careless and/or a deliberate attempt at jury nullification given his earlier objection to the Court's approved instruction." But the trial court noted that it "must presume that the jury followed the jury instructions and the verbal corrective instructions presented by the Court." It continued, "[t]herefore, while an extremely close call, the Court cannot find that [d]efense [c]ounsel's conduct, which was calculated, deliberate, and knowingly improper, was so pervasive and prejudicial to undermine the integrity of the jury's verdict."

¶ 25    The trial court also denied Mr. Acierno's motion for a new trial based on the alleged irregularities.

## 2.     Standard of Review and Applicable Law

¶ 26     A mistrial is a drastic remedy that is warranted only when the prejudice to the moving party cannot be addressed by other means. *Wark v. McClellan*, 68 P.3d 574, 578 (Colo. App. 2003).

¶ 27     A C.R.C.P. 59(d)(1) motion for a new trial may be granted when "[a]ny irregularity in the proceedings . . . prevented [the moving party] from having a fair trial."

¶ 28     Trial courts are in the best position to evaluate the prejudicial impact of misconduct by opposing counsel, *see Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 604 (Colo. App. 2007), and of any irregularities at trial, *see First Nat'l Bank v. Campbell*, 198 Colo. 344, 346, 599 P.2d 915, 917 (1979) ("Whether or not a new trial is granted is usually a matter for the sound discretion of the trial judge whose presence and observation at the trial better equip him for making this decision.").  Accordingly, we review for an abuse of discretion the trial court's denial of Mr. Acierno's motions for a mistrial and a new trial.  *Antolovich*, 183 P.3d at 608; *Wark*, 68 P.3d at 578.  A trial court abuses its discretion only if its decision was manifestly arbitrary, unreasonable, or unfair, or based on an

erroneous understanding or application of the law.  *See, e.g., Core-Mark Midcontinent Inc. v. Sonitrol Corp.*, 2016 COA 22, ¶ 28.

### 3.    Discussion

#### a.    Motion for a Mistrial

¶ 29    Mr. Acierno asserts that defense counsel's (1) misstatement of the trial court's jury instruction on the applicable standard of care and (2) improper comments related to "runaway juries, runaway verdicts, and adverse media" warranted a mistrial.

¶ 30    Although we agree with the trial court that this case presents "an extremely close call," under the circumstances, we cannot conclude that the trial court abused its discretion in denying Mr. Acierno's motion.

¶ 31    First, the trial court gave Mr. Acierno's motion for a mistrial careful consideration.  *See id.* (a trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair). Mr. Acierno raised his motion orally after defense counsel finished his closing argument.  The trial court took the motion under advisement, and Mr. Acierno later filed a written motion, to which defense counsel filed a response.  The court then held a post-trial hearing solely on the issue of whether a mistrial was warranted.

Both parties were given an opportunity to present argument and answer the trial court's questions related to the parties' filings. Thus, based on the procedural posture in which the trial court reached its decision, it is evident that the court carefully considered Mr. Acierno's motion for a mistrial. In other words, its decision was not arbitrary. *See id.*

¶ 32    Second, with respect to defense counsel's misstatement of the standard of care instruction, we agree, for the following reasons, that a mistrial was unnecessary. *See Wark*, 68 P.3d at 578.

- Before closing arguments, the trial court instructed the jury (1) on the complete version of the standard of care and (2) that arguments of counsel are not evidence. As the trial court noted, absent evidence to the contrary, we presume that the jury followed those instructions. *Qwest Servs. Corp. v. Blood*, 252 P.3d 1071, 1088 (Colo. 2011).

- Although the trial court later concluded that it should have sustained the objection to the incomplete instruction, when the objection was made, the court noted that the jury had, and could read, a complete version of the standard of care instruction. *See id.*

- After defense counsel presented the incomplete standard of care instruction, he referred to the testimony of Mr. Acierno's neurology experts.

- During the recess after defense counsel's closing argument, the trial court told Mr. Acierno's counsel that he was free to direct the jury's attention to defense counsel's incomplete representation of the standard of care instruction. Mr. Acierno's counsel did so. Specifically, in rebuttal closing, he told the jury that defense counsel "misrepresented the law" and then read the complete instruction to the jury highlighting the portion that had been omitted by defense counsel. *See Wark*, 68 P.3d at 578 (the drastic remedy of a mistrial is warranted only where the prejudice to the moving party cannot be remedied by alternative measures).

¶ 33 Third, with respect to defense counsel's statements in closing argument, we similarly conclude that a mistrial was not warranted because the trial court's remedial actions, along with its instructions to the jury, were sufficient to address any prejudice to Mr. Acierno. *See id.*

13

¶ 34    Indeed, the trial court sustained Mr. Acierno's counsel's objection to defense counsel's improper remarks. It then admonished defense counsel in front of the jury, twice, telling the jury it was to "completely and utterly disregard" defense counsel's remarks because they were "inappropriate and d[id] not belong in this type of a proceeding." *See Cook Inv. Co. v. Seven-Eleven Coffee Shop, Inc.*, 841 P.2d 333, 335 (Colo. App. 1992) (trial court did not abuse its discretion in denying a motion for a mistrial where "an immediate curative instruction" was given).

¶ 35    We acknowledge that during the recess that followed defense counsel's closing argument, the trial court agreed that it was "not sure" that its previous admonishment and instruction were sufficient to cure the prejudice stemming from defense counsel's improper remarks. But after the recess, the trial court again admonished defense counsel in front of the jury, and instructed the jury that it was to disregard counsel's statements. *See id.* And there is nothing in the record that rebuts the presumption that the jury followed the trial court's instructions. *See Qwest*, 252 P.3d at 1088.

14

¶ 36    However, Mr. Acierno contends that the trial court's curative instructions were insufficient because they did not identify the specific remarks that the jury was instructed to disregard. We are not persuaded.

¶ 37    As Mr. Acierno's counsel argued below, and has asserted in this appeal, the jury reacted strongly to defense counsel's improper remarks and he made an immediate objection. Accordingly, we cannot conclude that the jury would have been unable to identify the improper comments the trial court instructed it to disregard.

¶ 38    Mr. Acierno also cites four out-of-state cases for the proposition that defense counsel's improper comments warranted a mistrial. *See Norman v. Gloria Farms, Inc.*, 668 So. 2d 1016 (Fla. Dist. Ct. App. 1996); *Boren v. BOC Grp., Inc.*, 895 N.E.2d 53 (Ill. App. Ct. 2008); *Lioce v. Cohen*, 174 P.3d 970 (Nev. 2008); *Boyle v. Christensen*, 251 P.3d 810 (Utah 2011). However, in each of those cases, the attorneys' improper remarks were much more pervasive than defense counsel's statements in this case. *See, e.g., Lioce*, 174 P.3d at 974-78 (defense counsel made the same improper closing argument in four related cases, which he refined "over time"). Moreover, in three out of four of those cases, no admonition or

curative instruction was given by the trial courts. *See Norman,* 668 So. 2d at 1021-22[4]; *Lioce,* 174 P.3d at 974-78; *Boyle,* 251 P.3d at 813. And in *Boren,* the appellate court was reviewing a trial court's decision to *grant* a new trial, so that case is procedurally inapposite. 895 N.E.2d at 59-60. Accordingly, all four cases are distinguishable; Mr. Acierno's reliance on them is therefore misplaced.

¶ 39    To be clear, we do not condone defense counsel's misconduct. In the end, however, as the trial court described it, this was "an extremely close call." Had we been in the trial court's position, we might have reached a different result. But that is not grounds for reversing the trial court's discretionary decision. To the contrary, deference to the trial court's decision is important because it was in the best position to evaluate the prejudicial impact of defense counsel's misconduct in the context of the entire trial. *See Antolovich,* 183 P.3d at 604.

---

[4] In addition to the improper argument basis, the appellate court also reversed based on "improper contact" during trial between an agent of defendant's insurer and his brother, who was the foreman of the jury. *Norman v. Gloria Farms, Inc.,* 668 So. 2d 1016, 1018-19 (Fla. Dist. Ct. App. 1996).

### b. Motion for a New Trial

¶ 40 We have concluded that the trial court did not abuse its discretion in denying Mr. Acierno's motion for a mistrial based on defense counsel's (1) misstatement of the standard of care instruction and (2) improper remarks to the jury. For the same reasons, we conclude that the trial court did not abuse its discretion in denying Mr. Acierno's request for a new trial on those grounds.

¶ 41 The remaining question, then, is whether the other alleged irregularities, in addition to defense counsel's misconduct, required a new trial. For the following reasons, we conclude that they did not.

¶ 42 First, Mr. Acierno contends that a new trial was required because two witnesses gave testimony that differed from their testimony in prior depositions. Mr. Acierno asserts that he preserved this argument by (1) objecting to the changed testimony and (2) filing a motion objecting to defendant's request to meet ex parte with one of Mr. Acierno's treating physicians. We disagree. Mr. Acierno's counsel made no objection when he elicited the alleged changed testimony from the two witnesses. And his earlier

17

motion objecting to the requested ex parte meeting would not have alerted the trial court to his argument that one of these witnesses had changed his testimony, purportedly as a result of the meeting.

¶ 43  Accordingly, the trial court did not err in denying Mr. Acierno's motion for a new trial on the basis of changed witness testimony because that argument was not preserved by a contemporaneous objection. *See Mahan v. Capitol Hill Internal Med. P.C.*, 151 P.3d 685, 689 (Colo. App. 2006) ("Capitol Hill's counsel did not object to this statement at trial. Therefore, the objection was waived, and the trial court's denial of the motion for a new trial based on the statement of counsel was not error."), *superseded by statute as recognized in Carruthers v. Carrier Access Corp.*, 251 P.3d 1199 (Colo. App. 2010); *see also Antolovich*, 183 P.3d at 608 (the plaintiffs did not "offer[] a contemporaneous objection to" alleged "changed witness testimony"; "[a]ccordingly, their claims of surprise and irregularity are waived, and we will not address them on appeal").

¶ 44  In any event, even if we assume that Mr. Acierno's counsel preserved this issue, as the trial court noted, changes in witnesses' testimony "are not unusual," Mr. Acierno's counsel "impeached

18

[those] witnesses," and it was "the jury's role to determine credibility." In other words, even if we assume the witnesses changed their testimony, such changed testimony did not constitute an irregularity that was sufficiently prejudicial to warrant a new trial. *See First Nat'l Bank*, 198 Colo. at 346, 599 P.2d at 916-17 (trial judges' "presence and observation at . . . trial better equip[s]" them for evaluating whether a party was "prevented from having a fair trial") (citations omitted).

¶ 45    Second, Mr. Acierno contends that a defense witness violated the trial court's sequestration order. But the trial court found that the witness "stated credibly that he and his attorney were discussing house remodeling and the weather" and that Mr. Acierno did not "present additional evidence" in connection with his request for a new trial. In our view, the trial court made a factual finding that its sequestration order was not violated. *Cf. People v. Melendez*, 102 P.3d 315, 319 (Colo. 2004) ("In proper circumstances, the trial court may sequester witnesses, *find that a witness has violated the sequestration order*, and impose sanctions for the sequestration violation.") (emphasis added). And Mr. Acierno has not pointed to anything in the record establishing that

19

the court's finding was clearly erroneous. *See Legro v. Robinson*, 2015 COA 183, ¶ 15 (the court of appeals will not disturb a trial court's finding of fact unless it is clearly erroneous). Accordingly, the trial court did not err in denying Mr. Acierno's motion for a new trial.

¶ 46 Lastly, Mr. Acierno contends that a new trial was warranted because a juror slept through important portions of trial. As with the claims of changed testimony, however, Mr. Acierno raised this issue for the first time in his motion for a new trial. Thus, the trial court did not err in denying the motion on that basis. *See Mahan*, 151 P.3d at 689.

¶ 47 Nonetheless, we note that the trial court found that Mr. Acierno failed to present sufficient evidence "to show that [the juror] missed crucial parts of the trial." And again, Mr. Acierno has not cited anything in the record to show that the trial court's finding was clearly erroneous. *See Legro*, ¶ 15. Mr. Acierno's background section contains a subheading titled "A [j]uror sleeps through critical portions of the evidence." But in the statements of fact that follow, Mr. Acierno fails to allege that the juror actually slept during

20

trial, let alone cite to portions of trial transcript supporting such an assertion.

¶ 48    In sum, we conclude that, under the circumstances, the trial court did not abuse its discretion in denying Mr. Acierno's motion for a new trial.[5]

## B.    Ex Parte Meeting

¶ 49    Mr. Acierno contends that the trial court erred when it allowed defense counsel to meet ex parte with the radiologist who interpreted Mr. Acierno's MRI and MRA results.  We are not persuaded.

### 1.    Standard of Review and Applicable Law

¶ 50    We review rulings on issues of pre-trial discovery for an abuse of discretion.  *See Reutter v. Weber*, 179 P.3d 977, 984 (Colo. 2007). A trial court abuses its discretion if its ruling was manifestly arbitrary, unreasonable, or unfair, "or based on an erroneous understanding or application of the law."  *Core-Mark*, ¶ 28.

---

[5] To the extent Mr. Acierno contends, in his reply, that the trial court's decision to allow defense counsel to meet ex parte with Mr. Acierno's radiologist provided a basis for granting a new trial, we do not address arguments raised for the first time in a reply brief.  *See Rogers v. Forest City Stapleton, Inc.*, 2015 COA 167M, ¶ 38.

21

¶ 51     Under Colorado law, communications between patients and their physicians are generally privileged.  *Reutter*, 179 P.3d at 980.  However, the General Assembly has provided a statutory exception to that general rule: the "privilege does not apply to a medical provider '*who was in consultation with* a physician, surgeon, or registered professional nurse being sued . . . on the case out of which said suit arises.'"  *Id.* at 981 (quoting § 13-90-107(1)(d)(II), C.R.S. 2015) (emphasis in original).

¶ 52     Where the statutory exception to the patient-physician privilege applies, a trial court may grant a party's request to meet with a treating physician ex parte.  *See id.* at 980.  By "permitting informal communications between a defense attorney and a plaintiff's treating physician," the discovery process is promoted "by assuring that both parties have access to an informal, efficient, and cost-effective method for discovering facts relevant to the proceedings."  *Samms v. Dist. Court*, 908 P.2d 520, 526 (Colo. 1995).

¶ 53     Nevertheless, under some circumstances, trial courts should take appropriate measures to protect against the disclosure of residually privileged information, i.e., "medical information about

[the patient] that was unrelated to the course of treatment . . . forming the basis of the malpractice action." *Reutter,* 179 P.3d at 980. "Where the risk that residually privileged information will be divulged during an interview is relatively high, the preferred method of protecting against divulgement is to provide the plaintiff-patient with prior notice and an opportunity to attend the interview." *Id.* at 983. However, where a "trial court determines that the non-party medical providers possess no residually privileged information, the trial court does not abuse its discretion by refusing to require that the plaintiff be permitted to attend the interviews." *Id.* at 980.

## 2.    Discussion

¶ 54    In his response objecting to Dr. Garyfallou's motion to meet ex parte with the radiologist, Mr. Acierno asserted that there was "a significant risk of disclosure of [Mr. Acierno]'s residually privileged health information." Mr. Acierno did not, however, identify any information that should have been protected against disclosure. Accordingly, the trial court found that "the risk of [the witness] divulging residually privileged information is not sufficiently high enough to entitle [p]laintiff[] to attend the informal ex parte meeting [d]efendants seek." Even so, the trial court granted the motion with

23

the following condition: "Defendants' informal questioning is confined to matters that are not subject to physician-patient privilege[.]"

¶ 55    On appeal, Mr. Acierno does not assert that residually privileged information was divulged.

¶ 56    Accordingly, the trial court did not abuse its discretion in allowing defense counsel to meet ex parte with Mr. Acierno's radiologist. *See id.* at 982 (a trial court may allow plaintiff's counsel to attend a defendant's interviews "with non-party medical providers *where the risk is high* that residually privileged information will be divulged") (emphasis added).

¶ 57    Nevertheless, Mr. Acierno argues that the trial court should have placed additional limitations on the informal, ex parte meeting to prevent defense counsel from unduly influencing the radiologist's testimony. We disagree.

¶ 58    Even if we assume that undue influence is a proper basis for placing limitations on a party's request to meet ex parte with a non-party treating physician, Mr. Acierno has not cited anything in the record evidencing such influence. Instead, Mr. Acierno would have us infer undue influence from (1) the fact that the radiologist gave

24

testimony at trial that differed slightly from his testimony in a deposition and (2) defense counsel's misconduct in closing argument.

¶ 59    With respect to the changed testimony, Mr. Acierno asserts that he was "sandbagged" when the radiologist testified at trial that he received a telephone call from Dr. Garyfallou while Mr. Acierno was in the MRI machine exhibiting symptoms of a stroke or seizure. The record does not support Mr. Acierno's assertion because, as Dr. Garyfallou points out, the radiologist's trial testimony was generally consistent with his testimony in the deposition: "I don't remember a lot of detail, but I remember that when *we talked either during or after the MRI*, he — the patient was having some difficulty during his MRI."  (Emphasis added.)

¶ 60    In any event, as the trial court noted in its denial of Mr. Acierno's motion for a new trial, to the extent there may have been inconsistencies between the trial and deposition testimony, Mr. Acierno was free to impeach the radiologist on that basis.

## C.    Pro Rata Liability

¶ 61    Mr. Acierno contends that the trial court erred in denying his motion for a directed verdict on Dr. Garyfallou's affirmative defense

of pro rata liability. Specifically, he asserts that a directed verdict should have been granted because defense counsel's statement in closing argument — that Dr. Garyfallou was "not blaming any of the settling [d]efendants" — constituted a judicial admission disclaiming pro rata liability. We disagree.

¶ 62    "A judicial admission is a formal, deliberate declaration which a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute." *Kempter v. Hurd*, 713 P.2d 1274, 1279 (Colo. 1986).

¶ 63    Although a party can make a judicial admission in closing argument, there is no evidence in this case that defense counsel's statement was deliberate and made with the intent of "dispensing with proof" on the issue of pro rata liability. *See id.* Indeed, it would have made little sense to do so because pro rata liability was an affirmative defense asserted by Dr. Garyfallou. Thus, read in context, defense counsel's statement was more likely intended to rebut Mr. Acierno's counsel's statement in closing argument that Dr. Garyfallou was blaming the other physicians who had previously settled.

¶ 64    In any event, the jury concluded that Dr. Garyfallou did not breach the applicable standard of care.  Accordingly, any error with respect to the trial court's denial of Mr. Acierno's motion for directed verdict on pro rata liability was harmless because such an error related only to apportionment of damages.[6]  *See Leaf v. Beihoffer*, 2014 COA 117, ¶ 12 ("If a plaintiff fails to establish any one of [the negligence] elements, any errors related to other elements are necessarily harmless because the plaintiff cannot prevail in any event.").

---

[6] Citing *Paris v. Dance*, 194 P.3d 404, 406-07 (Colo. App. 2008), *superseded by statute as stated in Reid v. Berkowitz*, 2013 COA 110M, Mr. Acierno argues that the alleged error was not harmless. In *Paris*, the jury concluded that (1) while the plaintiff had injuries; (2) one set of defendants "was [not] at fault"; and (3) although the other defendant "was negligent, it did not cause any of [the] plaintiff's injuries." *Id.* at 406.  Thus, because the jury did not fill out the special verdict form apportioning damages, the *Paris* division could not conclude that an error was harmless with respect to the designation of the non-party.  In this case, however, the jury concluded that Dr. Garyfallou did not breach the applicable standard of care, so any error with respect to apportionment of damages — and evidence introduced in support thereof — was harmless.  *See Leaf v. Beihoffer*, 2014 COA 117, ¶ 12.  Accordingly, Mr. Acierno's reliance on *Paris* is misplaced.

27

## D. Cumulative Error

¶ 65 Relying on the doctrine of cumulative error, Mr. Acierno contends that we should reverse the judgment in favor of Dr. Garyfallou and remand for a new trial.

¶ 66 The doctrine of cumulative error, although applied regularly in criminal appeals, has not been extended to civil cases. *See Neher v. Neher*, 2015 COA 103, ¶ 66. Like the *Neher* division, we decline to apply it here because "[s]uch a significant expansion of precedent . . . is more properly the province of our supreme court." *Id.*

¶ 67 Nevertheless, we have rejected each of Mr. Acierno's contentions of error. So even if we assume that the doctrine of cumulative error should be extended to civil cases, it would not provide a basis for reversal in this case.

## III. Dr. Garyfallou's Cross-Appeal

¶ 68 Dr. Garyfallou contends that the trial court erred when it denied his motion seeking an award of costs against Mr. Acierno. He argues that such an award was mandatory under section 13-16-105. We agree.

## A. Additional Background

¶ 69     Dr. Garyfallou moved for an award of $165,232.82 in costs. He argued that he was entitled to recover his costs under section 13-16-105 because the jury had returned a verdict against Mr. Acierno.

¶ 70     Mr. Acierno objected to Dr. Garyfallou's motion. He contended that (1) an award of costs would be unreasonable under the circumstances because he was indigent and (2) the amount of costs sought was unreasonable. Mr. Acierno's legal guardians filed an accompanying affidavit to support Mr. Acierno's claim of indigence and the unreasonableness of any award.

¶ 71     The trial court denied Dr. Garyfallou's request for costs, noting that (1) Mr. Acierno has "locked-in syndrome" meaning he will be "reliant, 24/7, on caregivers for his daily needs"; (2) Mr. Acierno "will never be able to earn an income"; and (3) any award of costs would be against Mr. Acierno personally. The court also observed that although Mr. Acierno had reached settlements with other defendants, that money had been placed in a trust "to provide for [p]laintiff's medical needs and daily care," and "[p]laintiff needs every dollar of [the money in the trust] for his survival."

29

B.     Standard of Review and Applicable Law

¶ 72     "Whether a statute mandates an award of costs or attorney fees is a question of statutory interpretation and is thus a question of law we review de novo."  *Crandall v. City & Cty. of Denver*, 238 P.3d 659, 661 (Colo. 2010).

¶ 73     Our goal in interpreting a statute is to ascertain and give effect to the intent of the General Assembly.  *Id.*  To do so, we first look to the plain language of the statute at issue, "giving words and phrases their commonly accepted and understood meaning."  *Id.* at 662 (quoting *Colo. Dep't of Revenue v. Garner*, 66 P.3d 106, 109 (Colo. 2003)).  If the language is clear and unambiguous, our analysis ends.  But if the language is ambiguous, we resort to other evidence and rules of statutory construction.  *Id.*

C.     Discussion

¶ 74     Section 13-16-105 provides:

> If any person sues in any court of record in this state in any action wherein the plaintiff or demandant might have costs in case judgment is given for him and he is nonprossed, suffers a discontinuance, is nonsuited after appearance of the defendant, or a verdict is passed against him, then the defendant *shall have judgment to recover his costs against the plaintiff*, except against executors or

30

administrators prosecuting in the right of their testator or intestate, or demandant, to be taxed; and the same shall be recovered of the plaintiff or demandant, by like process as the plaintiff or demandant might have had against the defendant, in case judgment has been given for the plaintiff or demandant.

(Emphasis added.)

¶ 75 Based on the plain language of section 13-16-105, we conclude that an award of costs to a defendant is mandatory when (1) the plaintiff would be entitled to costs if "judgment [had been] given for him" and (2) judgment is entered in favor of the defendant.

¶ 76 First, section 13-16-105 states that a defendant "*shall* have judgment to recover his costs." (Emphasis added.) Ordinarily, "[t]he word 'shall' connotes a mandatory requirement." *Willhite v. Rodriguez-Cera*, 2012 CO 29, ¶ 17. And nothing in section 13-16-105 provides a reason for departing from the usual construction of the word "shall." *See Crandall*, 238 P.3d at 663 ("The statutory language contains no words that suggest anything other than a mandatory award."); *compare, e.g.*, § 13-16-105 (defendant "shall have judgment to recover his costs), *with* § 13-16-114, C.R.S. 2015 ("[I]n all other cases in equity not

31

otherwise directed by law, it is in the discretion of the court to award costs or not.").

¶ 77    Second, the supreme court and other divisions of this court have construed similar statutory sections as mandating an award of costs.  Most recently, in *Crandall*, the supreme court considered whether an award of costs is mandatory under section 13-16-113(2), C.R.S. 2015.  238 P.3d at 662-63.  This section provides that "[i]n all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other person, where any such action is dismissed prior to trial under rule 12(b) of the Colorado rules of civil procedure, the defendant *shall have judgment for his costs*."  § 13-16-113(2) (emphasis added). Based on the plain language of the statute, the court concluded that section 13-16-113(2) "unequivocally mandate[s] an award of costs . . . to a defendant when it prevails on a pre-trial C.R.C.P. 12(b) motion to dismiss."  *Crandall*, 238 P.3d at 663.

¶ 78    Similarly, in *National Canada Corp. v. Dikeou*, 868 P.2d 1131, 1139 (Colo. App. 1993), the division concluded that section 13-16-104, C.R.S. 2015, mandates an award of costs to a plaintiff when he or she recovers "debt or damages in an action."

Significantly, section 13-16-104 contains language very similar to the language in 13-16-105: "the plaintiff or demandant *shall have judgment* to recover against the defendant his costs to be taxed." *Compare* § 13-16-104, *with* § 13-16-105.  Moreover, section 13-16-104 is the counterpart to section 13-16-105 — the former specifies when plaintiffs are entitled to recover costs whereas the latter sets out the circumstances under which defendants are entitled to costs.

¶ 79    Despite this mandatory language, Mr. Acierno argues that trial courts have "virtually unlimited discretion with respect to whether to award costs to a prevailing party."  In support, he cites to a number of decisions from divisions of this court, including *Valentine v. Mountain States Mutual Casualty Co.*, 252 P.3d 1182, 1187 (Colo. App. 2011).  Specifically, Mr. Acierno relies (as did the trial court) on the *Valentine* division's statement that "[a]bsent a prohibition in a statute or rule, the district court has considerable discretion in determining whether to award costs and what amount to award."  *Id.*

¶ 80    Both Mr. Acierno's and the trial court's reliance on *Valentine* is misplaced.  The *Valentine* division's statement — that trial courts

have "considerable discretion in determining whether to award costs and what amount to award" — refers to a court's discretion in deciding whether or not to award a party's request for a *particular* cost in a *particular* amount. *Id.* *Valentine* and the other cases cited by Mr. Acierno do not stand for the proposition that a trial court has broad discretion, under section 13-16-105, to completely deny a prevailing defendant's request for costs.

¶ 81 Nonetheless, Mr. Acierno contends that a prior version of C.R.C.P. 54(d) — the version that was in effect when the court denied Dr. Garyfallou's motion for costs — vested courts with discretion to deny a prevailing defendant's request for costs on the basis of the plaintiff's indigency.[7] However, the prior version of C.R.C.P. 54(d) provided that *"[e]xcept when express provision therefor is made . . . in a statute . . .* costs shall be allowed as of course to the prevailing party unless the court otherwise directs." (Emphasis added.) And, as we have concluded above, section 13-16-105 expressly mandates an award of costs to a prevailing

---

[7] The language Mr. Acierno relies on — "unless the court otherwise directs" — was deleted from C.R.C.P. 54(d) by amendment in 2015. However, the amended version of C.R.C.P. 54(d) did not take effect until July 1, 2015, and the trial court ruled on Dr. Garyfallou's motion for costs in September 2014.

defendant. Accordingly, the discretionary language in C.R.C.P. 54(d) was inapplicable. *See Nat'l Can. Corp.*, 868 P.2d at 1139 ("[B]ecause express provision is made in a statute, *see* § 13–16–104, and since that statute requires that costs be assessed, C.R.C.P. 54(d) is inapplicable to the extent that it makes the awarding of costs discretionary.").

¶ 82　In this case, Mr. Acierno would have been entitled to costs had he prevailed at trial. Thus, an award of costs to Dr. Garyfallou is mandatory under section 13-16-105. We therefore remand this case to the trial court to enter an award of costs to Dr. Garyfallou. In determining an appropriate award, the trial court shall exercise its considerable discretion in determining which costs to award and what amounts are reasonable.

## IV.　Conclusion

¶ 83　The judgment is affirmed, the order denying costs is reversed, and the case is remanded to the trial court with directions.

JUDGE WEBB and JUDGE J. JONES concur.