24CA2135 Bennett v Peace 10-30-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA2135
Jefferson County District Court No. 23CV31167
Honorable R. Michael Mullins, Judge

---

Kathleen R. Bennett,

Plaintiff-Appellant,

v.

William Joseph Peace, M.D.,

Defendant-Appellee.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE SULLIVAN
Welling and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 30, 2025

---

Jones & Keller, P.C., Stuart N. Bennett, Denver, Colorado; Wahlberg, Woodruff, Nimmo & Sloane, LLP, Megan K. Matthews, Denver, Colorado, for Plaintiff-Appellant

Hershey Decker Drake, P.L.L.C., C. Todd Drake, Lone Tree, Colorado; Robinson Law, LLC, Bradley G. Robinson, Denver, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Plaintiff, Kathleen Bennett, appeals the trial court's judgment entered on the jury's verdict in favor of defendant, William Joseph Peace, M.D.  We affirm.

## I.     Background

¶ 2     In September 2021, Dr. Peace performed a right hip rhinoplasty (replacement) surgery on Bennett.  A few weeks later, Bennett met with Dr. Peace and complained of hip, nerve, and muscle pain and expressed concern that one leg was longer than the other.  Dr. Peace explained that he didn't believe Bennett's pain was due to the surgery and that it could instead be explained by separate issues with Bennett's spine.

¶ 3     Dr. Peace subsequently referred Bennett to another doctor who prescribed spinal and hip injections to reduce her pain and inflammation.  But Bennett's pain persisted, and she sought a second opinion from another surgeon, who performed revision surgery in December 2022.

¶ 4     In August 2023, Bennett sued Dr. Peace, alleging he negligently performed the initial hip replacement surgery.  Judges other than the trial judge ruled on pretrial matters.  At the close of evidence, the jury returned a verdict for Dr. Peace, finding that

Bennett didn't have any injuries, damages, or losses and that Dr. Peace wasn't negligent.

¶ 5     On appeal, Bennett contends that the trial court erred by (1) excluding the testimony of Bennett's rebuttal expert; (2) issuing an improper adverse inference instruction regarding spoliated evidence and admitting that evidence; (3) ignoring pretrial rulings in violation of the law of the case doctrine; (4) improperly instructing the jury on recoverable damages; and (5) committing other trial irregularities.  We address each contention in turn.

## II.     Exclusion of Bennett's Rebuttal Expert

¶ 6     We first address Bennett's contention that the trial court erred by excluding the testimony of Bennett's rebuttal expert, Dr. Renato Bosita Jr.

### A.     Additional Background

¶ 7     Before trial, Bennett served Dr. Bosita's expert report on Dr. Peace.  In the report, Dr. Bosita opined that Bennett's lumbar spine wasn't causing Bennett significant pain.  Dr. Peace filed a motion in limine seeking to exclude Dr. Bosita's testimony related to the care provided by Dr. Peace, which the trial court denied.

¶ 8     On the final day of trial, the trial court denied Bennett's request that Dr. Bosita be permitted to testify as a rebuttal expert. The court reasoned that Dr. Bosita wasn't a proper rebuttal expert because Dr. Peace hadn't presented any evidence that Bennett's pain was caused by her spinal issues, and, thus, there was no evidence to rebut. On appeal, Bennett argues that the trial court shouldn't have excluded Dr. Bosita's testimony. We agree but conclude the court's error was harmless.

### B.     Standard of Review and Applicable Law

¶ 9     We review a trial court's decision on the admissibility of expert testimony for an abuse of discretion. *Gonzales v. Windlan,* 2014 COA 176, ¶ 20. "A trial court abuses its discretion when its ruling is 'manifestly arbitrary, unreasonable, or unfair,' or when it misapplies the law." *Rains v. Barber*, 2018 CO 61, ¶ 8 (quoting *Freedom Colo. Info., Inc. v. El Paso Cnty. Sheriff's Dep't,* 196 P.3d 892, 899 (Colo. 2008)).

¶ 10     But we must disregard any error that is harmless — that is, error that doesn't affect the substantial rights of the parties. C.R.C.P. 61; *Leaf v. Beihoffer*, 2014 COA 117, ¶ 11. An error doesn't affect a party's substantial rights if we can say with fair

assurance that the error didn't substantially influence the outcome of the case or impair the basic fairness of the trial. *Leaf*, ¶ 11.

¶ 11 Rebuttal evidence includes "any competent evidence which explains, refutes, counteracts, or disproves the evidence put on by the other party, even if the rebuttal evidence also tends to support the party's case-in-chief." *Warden v. Exempla, Inc.*, 2012 CO 74, ¶ 22 (quoting *People v. Welsh*, 80 P.3d 296, 304 (Colo. 2003)). "The party offering rebuttal evidence 'must demonstrate that the evidence is relevant to rebut a specific claim, theory, witness or other evidence of the adverse party.'" *Id.* (quoting *Welsh*, 80 P.3d at 304). But parties have "significant leeway," and the evidence need only rebut "some portion of an opposing party's claim." *Id.*

### C. The Trial Court Erred by Excluding Dr. Bosita's Rebuttal Testimony

¶ 12 We conclude that the trial court abused its discretion by excluding Dr. Bosita's rebuttal testimony. The trial court found that Dr. Peace hadn't presented any evidence for Dr. Bosita to rebut, but that finding is contradicted by earlier statements at trial by defense counsel and Dr. Peace.

¶ 13     In his opening statement, defense counsel argued that Bennett's lower back issues "could be contributing to some of her complaints."  Similarly, Dr. Peace testified on direct examination that he was concerned that Bennett's lumbar spine issue could be contributing to some of her pain and that the pain couldn't be caused by the hip replacement surgery.  On cross-examination, Dr. Peace again testified that he believed treating Bennett's spine would help relieve some of her pain and that her pain wasn't caused by the hip replacement surgery.

¶ 14     Because Bennett offered Dr. Bosita to establish that Bennett's pain wasn't due to her spinal issues, his testimony was "relevant to rebut a specific claim" offered by Dr. Peace.  *Warden*, ¶ 22 (quoting *Welsh*, 80 P.3d at 304).  Stated differently, Dr. Bosita's testimony tended to refute Dr. Peace's alternative causation theory that Bennett's spinal issues led to her pain.  Thus, the trial court abused its discretion when it excluded Dr. Bosita's rebuttal testimony.  *See id.* at ¶¶ 27-29 (holding trial court abused its discretion by striking rebuttal testimony that refuted opposition's theory of causation).

¶ 15 Dr. Peace nonetheless argues that rebuttal evidence isn't appropriate when it supports the party's case-in-chief or when the opponent doesn't raise new subject matter. But that argument is foreclosed by our supreme court's precedent. *See id.* at ¶ 27 ("That [the rebuttal testimony] concomitantly helped the [plaintiffs'] case-in-chief does not mean it was an improper rebuttal disclosure."); *Taylor v. Mazzola*, 375 P.2d 96, 98-99 (Colo. 1962) (holding trial court erred by excluding plaintiff's rebuttal testimony that refuted defendant's and officer's testimony, even though such testimony also supported plaintiff's case-in-chief).[1] While Dr. Bosita's testimony may have supported Bennett's case-in-chief, it was

---

[1] Dr. Peace's reliance on *People v. Hansen*, 551 P.2d 710, 712 (Colo. 1976), to argue otherwise is misplaced. That criminal case predates *Warden* and, in any event, involved a defendant's request to admit surrebuttal evidence, not rebuttal evidence. *See id.*

offered to refute Dr. Peace's specific testimony that Bennett's spinal issues caused her pain.[2]

### D. The Court's Error Was Harmless

¶ 16 While the trial court abused its discretion by excluding Dr. Bosita's rebuttal testimony, we nonetheless conclude that the error was harmless. *See* C.R.C.P. 61.

¶ 17 "[A] jury determination that a plaintiff has suffered no injury or damage renders harmless any error relating solely to the issue of liability" if it is clear the fact finder determined the injury issue separately from the liability issue. *Dunlap v. Long*, 902 P.2d 446, 448 (Colo. App. 1995). In *Dunlap*, another medical malpractice case, a division of this court concluded that the trial court's alleged evidentiary and instruction errors on the issue of liability were harmless because the jury followed the trial court's instruction to

---

[2] To the extent Dr. Peace argues that Dr. Bosita's testimony constituted a "backdoor" attempt by Bennett to offer evidence on the standard of care, Dr. Peace could have requested a limiting instruction informing the jury that it could consider Dr. Bosita's testimony solely to rebut the theory that Bennett's spinal issues caused her pain. *See People v. Rowerdink*, 756 P.2d 986, 994 (Colo. 1988) (holding trial court acted within its discretion when admitting rebuttal testimony because any potential prejudice was dispelled by court's limiting instruction and the parties' stipulations).

determine the plaintiffs' damages separately from the defendant's liability and found none. *Id.* at 448-49.

¶ 18    Here, as in *Dunlap*, the trial court instructed the jury that it should determine the issues of liability and damages separately. Specifically, the trial court told the jury in a special verdict form to answer the same three questions posed in *Dunlap*: (1) "Did the plaintiff, Kathleen Bennett, have injuries, damages or losses?"; (2) "Was the defendant, William Joseph Peace, M.D., negligent?"; and (3) "Was the negligence, if any, of the defendant, William Joseph Peace, M.D., a cause of any of the injuries, damages or losses claimed by the plaintiff?"  And as in *Dunlap*, the jury separately answered each question, "No."  *See id.* at 448.

¶ 19    Accordingly, because the jury determined that Bennett didn't suffer any damages, and because the exclusion of Dr. Bosita's rebuttal testimony related solely to the issue of liability, we can say with fair assurance that the trial court's erroneous exclusion of Dr. Bosita's testimony didn't substantially influence the jury's verdict or impair the basic fairness of the trial.  *See id.* at 448-49; *Leaf*, ¶ 11.

8

### III. Spoliated Evidence

¶ 20    Bennett contends that the trial court erred by (1) issuing an adverse inference instruction regarding spoliated evidence; and (2) admitting an altered version of that evidence at trial, arguing it was inauthentic.

### A.    Additional Background

¶ 21    During discovery, Bennett sought electronic evidence of the preoperative template used by Dr. Peace to plan Bennett's hip replacement surgery.  Dr. Peace accessed Bennett's electronic chart and used his cell phone to take a photograph of the computer screen with the template displayed.  When Dr. Peace closed out of the chart, the template was overwritten and saved with a new date. Although Dr. Peace provided Bennett with the photograph he took, he wasn't able to provide the template with the original date.

¶ 22    At a hearing the week before trial, the trial court found Dr. Peace had committed "willful conduct" by "allowing these documents to not be properly preserved."  It found that an adverse inference instruction was appropriate, but it couldn't determine whether Dr. Peace altered the evidence in bad faith.  The court therefore said that the trial judge would decide the precise wording

of the adverse inference instruction after determining Dr. Peace's state of mind.

¶ 23    At trial, Dr. Peace testified about accessing the template and why the template included a new date.  Based on his testimony, the trial court found that Dr. Peace hadn't acted in bad faith.  Bennett admitted the photograph taken with Dr. Peace's phone, while Dr. Peace admitted the template with the new date.  The trial court instructed the jury that it "may infer, by reason of Dr. Peace's failure to preserve [the original template], that the evidence contained in the template may have been unfavorable" and that the jury "shall determine the weight to give this inference, if any."

### B.    Standard of Review and Applicable Law

¶ 24    We review a trial court's decision on the form of an adverse inference instruction for abuse of discretion.  *See Aloi v. Union Pac. R.R. Corp.*, 129 P.3d 999, 1002 (Colo. 2006).  A trial court enjoys broad discretion in issuing an adverse inference instruction.  *Id.*; *Warembourg v. Excel Elec., Inc.*, 2020 COA 103, ¶ 76.

¶ 25    An adverse inference instruction can serve both a punitive and remedial purpose.  *Aloi,* 129 P.3d at 1002.  In determining the severity of the instruction, the spoliator's state of mind is

10

important. *Warembourg*, ¶ 57. At the harshest end of the spectrum, when the spoliator acts in bad faith, the court may instruct the jury that certain facts are deemed admitted and must be accepted as true. *Id.* At the other end of the spectrum, "[t]he least harsh instruction permits (but does not require) a jury to presume that the lost evidence is both relevant and favorable to the innocent party." *Id.* (emphasis omitted) (quoting *Pension Comm. of Univ. of Montr. Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 470 (S.D.N.Y. 2010)); *see also Terra Mgmt. Grp., LLC v. Keaten*, 2025 CO 40, ¶ 31 (courts consider a "variety of factors" when deciding whether to sanction a party for spoliation of evidence, including the spoliator's culpability and degree of prejudice to the other party).

¶ 26 We similarly review a trial court's decision on the admissibility of evidence for abuse of discretion. *Warembourg*, ¶ 88. Authentication is a condition precedent to the admissibility of physical evidence. *People v. Glover*, 2015 COA 16, ¶ 12. The authentication requirement is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." CRE 901(a). But an original isn't required if all originals

have been lost or destroyed, "unless the proponent lost or destroyed them in bad faith." CRE 1004(1).

## C. Adverse Inference Instruction

¶ 27 Bennett challenges the wording of the trial court's adverse inference instruction, arguing it was insufficient to remediate the harm to her because the instruction used the word "loss" rather than "destruction." Bennett also argues the instruction allowed the jury to determine whether Dr. Peace preserved the template and what weight to give the adverse inference, if any. Finally, Bennett contends the trial court failed to properly consider her objections and articulate its reasoning. We reject these arguments and conclude the trial court acted within its discretion in issuing the adverse inference instruction.

¶ 28 At trial, Dr. Peace testified that he inadvertently saved over the original template when he accessed it for this litigation. But he explained that, other than the new date being saved, he made no other changes to the template. This testimony supports the trial court's finding that Dr. Peace didn't alter the template in bad faith. Further, Dr. Peace's testimony suggests that the original preoperative template wouldn't have been unfavorable to the

12

defense. *See Terra Mgmt. Grp.,* ¶ 31. Thus, the trial court didn't abuse its discretion by giving a less severe adverse inference instruction than Bennett requested. *See Rodriguez v. Schutt,* 896 P.2d 881, 884-85 (Colo. App. 1994) (trial court didn't abuse its discretion by declining to give an adverse inference instruction when the evidence wouldn't have been unfavorable to the spoliator, and the court found no bad faith), *aff'd in part and rev'd in part on other grounds,* 914 P.2d 921 (Colo. 1996).

¶ 29    We similarly reject Bennett's argument that the trial court abused its discretion by omitting the word "destruction" in the instruction. "[D]estroy" means "to ruin the structure, organic existence, or condition of" and "to bring to naught by putting out of existence." Webster's Third New International Dictionary 615 (2002). Dr. Peace testified that the only change he made to the template was changing the displayed date. In other words, he didn't ruin the structure of the template or put it out of existence. With the exception of the date, the template still existed and contained the same information as before. Thus, the trial court didn't abuse its discretion by declining to use a word that was inconsistent with Dr. Peace's actions.

¶ 30    Bennett's other arguments are also unavailing.  Contrary to her contention that the court permitted the jury to determine whether the evidence was preserved, the instruction properly informed the jury of "Dr. Peace's failure to preserve" the evidence. In addition, commensurate with the court's finding that Dr. Peace hadn't acted in bad faith, the instruction gave the jury discretion to determine how much weight to give the inference that the lost evidence would have been unfavorable to Dr. Peace.  Finally, the court explained that it adopted the given instruction because it hadn't heard any evidence of bad faith.

¶ 31    Given the court's findings, the permissive instruction given by the court wasn't an abuse of discretion.  *See Aloi*, 129 P.3d at 1001-04 (concluding trial court didn't abuse its discretion by giving a similar instruction when court found spoliator destroyed evidence willfully but not in bad faith); *see also Scalia v. County of Kern*, 658 F. Supp. 3d 809, 816 (E.D. Cal. 2023) (determining permissive adverse inference instruction was warranted when defendant didn't act in bad faith).

## D. Admission of the Preoperative Template

¶ 32 Bennett also contends that the trial court erred by admitting the template with the new date and by not giving the adverse inference instruction contemporaneously with the introduction of that template. We disagree.

¶ 33 During trial, Dr. Peace moved to admit the version of the template with the new date. Defense counsel asked a defense expert witness whether it was the "actual template" used for Bennett's surgery. Bennett's counsel asked to approach the bench and argued that the witness couldn't testify that it was the actual template Dr. Peace used and that an adverse inference instruction should be given contemporaneously. The court admitted the template and declined to instruct the jury contemporaneously, but it sustained Bennett's "objection to the way the question was asked." Under these circumstances, we perceive no abuse of discretion.

¶ 34 As a threshold issue, we note Bennett didn't preserve this issue by objecting to the admission of the template at trial. Rather, Bennett's counsel indicated that he objected to defense counsel asking the witness whether the offered template was the actual

15

template used by Dr. Peace. Because Bennett's counsel never specifically objected to the admission of the template, her contention wasn't preserved for appellate review. *See* CRE 103(a)(1) (error may not be predicated on a ruling admitting evidence unless the party timely objects and states "the specific ground of objection"); *cf. Am. Fam. Mut. Ins. Co. v. DeWitt*, 218 P.3d 318, 325-26 (Colo. 2009) (claim unpreserved when party objected only to the evidence's relevance, not to its unfair prejudice).

¶ 35 But even if we were to reach the merits of Bennett's claim that the court shouldn't have admitted the template because it was inauthentic, we would disagree. Authentication requires evidence "sufficient to support a finding that the matter in question is what its proponent claims." CRE 901(a). In this case, the defense's expert witness testified that he relied on the admitted template in forming his opinions. This testimony was sufficient to satisfy CRE 901(a). *See Gilley v. Oviatt*, 2025 COA 27, ¶¶ 17-18 (exhibit properly authenticated when witness testified that it was a fair and accurate representation of the medical bills they reviewed for the case).

¶ 36    Moreover, the template offered by Dr. Peace wasn't inadmissible simply because the original was lost or destroyed. When, as here, the court finds that the proponent of the evidence didn't act in bad faith, the original of a written document isn't required, and the court may admit other evidence of its contents. *See* CRE 1004(1); *Rodriguez*, 896 P.2d at 884-85.

¶ 37    We also aren't convinced by Bennett's argument that the adverse inference instruction should have been given contemporaneously with the admission of the template. As the trial court explained, it couldn't determine the exact form of the instruction until it heard testimony from Dr. Peace, which hadn't occurred when the template was offered into evidence.

¶ 38    Bennett's reliance on *Aloi* is misplaced. That case permits, but doesn't require, the court to give an adverse inference instruction contemporaneously, consistent with the broad discretion afforded to trial courts when issuing such instructions. *See Aloi*, 129 P.3d at 1004-06.

¶ 39    Accordingly, the court didn't abuse its discretion by admitting the template or by declining to give the adverse inference instruction contemporaneously with its admission.

## IV.    Law of the Case

¶ 40    Bennett also contends that the trial court erred by failing to follow the law of the case doctrine when it reversed three pretrial orders issued by other judges: (1) an order ruling Bennett had properly disclosed Dr. Bosita's rebuttal expert opinions; (2) an order ruling that an adverse inference instruction should be given; and (3) an order ruling that Dr. Peace couldn't testify to matters beyond his treatment of Bennett or not disclosed in his non-retained expert report.  We discern no error.

### A.    Applicable Law and Standard of Review

¶ 41    As applied to earlier rulings of a trial judge, the law of the case doctrine is a discretionary rule of practice that provides that "prior relevant rulings made in the same case are to be followed unless such application would result in error or unless the ruling is no longer sound due to changed conditions." *Stockdale v. Ellsworth*, 2017 CO 109, ¶ 37 (quoting *People v. Dunlap*, 975 P.2d 723, 758 (Colo. 1999)).  But the doctrine doesn't prevent a court from clarifying or even revisiting its prior rulings.  *Id.*; *In re Bass*, 142 P.3d 1259, 1263 (Colo. 2006).  Rather, a trial court may rescind or

modify prior rulings in an ongoing proceeding "upon proper grounds." *Bass*, 142 P.3d at 1263.

¶ 42    We review whether a trial court had "proper grounds" for modifying a prior ruling for an abuse of discretion. *S. Cross Ranches, LLC v. JBC Agric. Mgmt., LLC*, 2019 COA 58, ¶ 44.

### B.    Analysis

¶ 43    As to Bennett's first and second contentions under the law of the case doctrine, we have already determined that (1) it was an abuse of discretion, but harmless, to exclude Dr. Bosita's testimony; and (2) the trial court didn't abuse its discretion by giving a less severe adverse inference instruction than Bennett requested.  Because Bennett offers no additional arguments explaining why these actions constituted error under the law of the case doctrine, we need not address these issues through a law of the case lens.

¶ 44    As to her third law of the case contention, Bennett argues that the trial court erred by allowing Dr. Peace to testify about liability and causation despite a pretrial ruling limiting his testimony to his observation and treatment of Bennett.

¶ 45    In a pretrial ruling, the court said that if Dr. Peace's testimony went beyond his care and treatment of Bennett, it "would be a determination at trial where [Bennett] c[ould] object and the [c]ourt c[ould] make that determination." After that pretrial ruling, Bennett filed a motion in limine to preclude Dr. Peace from testifying that his care was reasonable. But the court denied that motion, ruling that Bennett's motion would be "more properly addressed during witness examination and objections, and/or during *voir dire*."

¶ 46    The trial court's decision to allow Dr. Peace to testify at trial about liability after hearing Bennett's objections was consistent with these earlier rulings. As a result, the trial court didn't violate the law of the case doctrine.

## V.    Damages Jury Instruction

¶ 47    Bennett next contends that the trial court erred by denying her tendered jury instruction regarding recoverable damages.

¶ 48    Bennett's tendered instruction on damages asked the jury to consider damages caused by "emotional distress from a reasonable fear of future injuries or damage." The court rejected Bennett's tendered instruction and instead gave an instruction that followed the pattern damages instruction in CJI-Civ. 6:1 (2025). Consistent

with the pattern instruction, the court instructed the jury to consider "losses or injuries which plaintiff has had to the present time or probably will have in the future, including: physical and mental pain and suffering, inconvenience, emotional stress, impairment of the quality of life and physical impairment or disfigurement." The court explained that the pattern instruction adequately covered damages from stress due to the potential for future injury.

¶ 49    Provided the trial court's jury instructions correctly state the law, we review the court's decision to give a specific jury instruction for abuse of discretion. *Bedor v. Johnson*, 2013 CO 4, ¶ 8; *see also Wolven v. Velez*, 2024 COA 8, ¶¶ 35-37 (trial court didn't inaccurately state the law when it rejected defendant's proposed modification to pattern damages instruction in CJI-Civ. 6:1). Under C.R.C.P. 51.1, a trial court in a civil case must use the pattern instructions contained in Colorado Jury Instructions when applicable unless the factual situation or changes in the law warrant a departure.

¶ 50    We discern no abuse of discretion in the trial court's decision to adhere to the pattern damages instruction. The trial court's

instruction told the jury to consider injuries due to "mental pain and suffering" and "emotional stress." The trial court correctly noted that this language encompassed stress due to the potential for future injury. *See Wolven,* ¶¶ 35-37 (trial court didn't abuse discretion by giving pattern damages instruction without further defining its terms).

¶ 51    We aren't convinced otherwise by Bennett's reliance on *Boryla v. Pash,* 960 P.2d 123, 126-28 (Colo. 1998). In that case, the supreme court upheld a damages instruction that told the jury to consider injuries due to "impairment of the quality of life caused by an increased risk of cancer." *Id.* at 126, 128 (emphasis omitted). But the court didn't require that a specialized instruction be given in every case involving fear of cancer, much less every case in which a party harbors a reasonable fear of heightened risk of future injury. *See id.*

¶ 52    Accordingly, the court didn't abuse its discretion by rejecting Bennett's tendered instruction on recoverable damages.

## VI.    Other Trial Irregularities

¶ 53    Bennett also contends the trial court committed other errors that led to prejudicial trial irregularities.

22

¶ 54    Bennett first contends, in a single sentence in her opening brief, that "the trial court allowed [Dr. Peace] to proceed with an incomplete and problematic set of exhibits, which led to confusion by the court and, presumably, the jurors."  But Bennett doesn't explain how the exhibits confused the jury or why they warrant granting a new trial.  Bennett also argues, without citing any supporting authority, that a new trial is warranted because the trial court expressed a desire to complete the trial quickly, giving "an impression that the trial court did not value [Bennett's] case."  Because Bennett hasn't sufficiently developed either argument, we decline to address them.  *See Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 604 (Colo. App. 2007) (declining to address "underdeveloped arguments").

## VII.   Cumulative Error

¶ 55    Finally, Bennett contends that the cumulative impact of the trial court's errors requires reversal.  But Colorado courts haven't extended the doctrine of cumulative error to civil cases.  *Acierno v. Garyfallou,* 2016 COA 91, ¶ 66.  Even if the doctrine did apply in civil cases, it wouldn't apply in this case because we have identified only one error and found it harmless.  *See People v. Conyac,* 2014

COA 8M, ¶ 152 ("The doctrine of cumulative error requires that numerous errors be committed, not merely alleged.").

¶ 56 Accordingly, the cumulative error doctrine doesn't require reversal.

## VIII. Disposition

¶ 57 We affirm the judgment.

JUDGE WELLING and JUDGE BERNARD concur.